Thomas S. Gingras, Esquire
Alaska Bar No. 7811098
EIDE, GINGRAS & PATE, P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
Tel. (907) 279-0930
Fax. (907) 279-0933

Attorneys for Defendants
    Kanag'iq Construction Co., Inc. &
    Western Surety Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES for the use of GMW Fire Protection, Inc., an Alaska Corporation,<br><br>    Plaintiff,<br>vs.<br><br>KANAG'IQ CONSTRUCTION CO., INC., an Alaska Corporation and WESTERN SURETY COMPANY, a South Dakota Corporation,<br><br>    Defendants. | Case No. A05-170 Civil (JKS) |

## MEMORANDUM IN SUPPORT OF MOTION FOR RULE OF LAW AND PARTIAL SUMMARY JUDGMENT REGARDING SUBCONTRACT

This is a construction contract case. Plaintiff The United States, on behalf of GMW Fire Protection, Inc. ("GMW"), alleges that Defendant Kanag'iq Construction Co., Inc. ("Kanag'iq") failed to pay GMW amounts purportedly owed under a subcontract between Kanag'iq and GMW. Kanag'iq denies the allegations and further alleges that

Memorandum in Support of Motion for Rule of Law and Partial Summary Judgment     Page 1 of 10
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (JKS)

GMW overcharged Kanag'iq for both services and materials, for which Kanag'iq seeks an award of damages. Kanag'iq now moves for a judicial ruling regarding particular provisions of the subcontract between Kanag'iq and GMW.

## I. STATEMENT OF FACTS

The United States entered into a government contract (main contract) with Kanag'iq to construct fire alarm and sprinkler systems at Elmendorf Air Force Base in Anchorage. [Exhibit A, Main Contract, p. 1 (cover)] There is no dispute that the main contract is a unit price contract and included an option to extend the term of the contract beyond the base year, not to exceed 36 months. [Exhibit A, p. 3] No part of the main contract is in dispute. Kanag'iq subsequently entered into a subcontract with GMW to furnish and perform work on the fire protection construction project at Elmendorf. [Exhibit B, Subcontract] Specifically, GMW was to provide all design, supervision, installation, materials, labor, suppliers, equipment, and tools pursuant to the contract. [Exhibit B, ¶ 3] The base year for that contract was September 29, 2000 to September 29, 2001. [Exhibit B, ¶ 3]

Kanag'iq is the principal on a payment bond required by the government in such contracts. The payment bond is in the amount of $709,148.90 and is to protect persons supplying labor and material in carrying out the work provided for in the contract. [Exhibit C] Co-Defendant Western Surety Company is the surety on the bond. [Exhibit C] The construction project was completed in 2004.

GMW alleges that Kanag'iq has failed to pay $533,848.77 purportedly owed

Memorandum in Support of Motion for Rule of Law and Partial Summary Judgment  Page 2 of 10
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (JKS)

under the subcontract. [Complaint ¶ 12] Kanag'iq denies the allegations. Kanag'iq further alleges that GMW overcharged Kanag'iq in an amount in excess of $100,000. [Counterclaims: Count 1, ¶ 2] Kanag'iq now moves for a judicial ruling regarding particular provisions of the subcontract at issue.

## II.   STANDARD

Federal Rule of Civil Procedure 56(c) provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Rule 56 also allows a court to grant summary judgment on part of a claim or defense. Fed. R. Civ. P. 56(a) (a party may move for a summary judgment as to all claims or any part thereof). The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence that it believes to demonstrate the absence of a genuine issue of material fact. Landeis v. Future Ford, 2006 WL 1652659 (E.D. Cal. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). In doing so, the opposing party must tender evidence of specific facts in the form of admissible discovery to support its contention that a fact in dispute is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In resolving the motion, all reasonable inferences that may be drawn from the facts must be drawn in favor of the opposing party. Anderson at 255. Nonetheless, it is the

Memorandum in Support of Motion for Rule of Law and Partial Summary Judgment                         Page 3 of 10
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (JKS)

Eide, Gingras & Pate P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D.Cal. 1985).

### III.  DISCUSSION

A.  **The Subcontract Is An Integrated Contract Pursuant To The Contract Language.**

An integrated contract is one that is intended to describe the entire agreement. Casey v. Semco Energy, Inc., 92 P.3d 379, 383 (Alaska 2004). That is, the contract is the final and complete expression of the parties' agreement. The subcontract in this case is an integrated contract. Specifically, the provisions of the subcontract provide in relevant part:

> No modifications of this agreement and no waiver of any rights under this SUBCONTRACT shall be valid or binding on the parties unless the same be in writing. Failure of the CONTRACTOR to insist upon strict performance of the SUBCONTRACT, or to exercise an option herein conferred in any one or more instances, shall not be construed to be a waiver of any such, or any other covenants or agreements, but the same shall be and remain in full force and effect.

[Exhibit B, p. 5, § T] Thus, any modifications to the subcontract or waiver of rights under the subcontract **must** have been in writing. More specifically, any failure of Kanag'iq to insist upon strict performance of the subcontract was **not** be construed to be a waiver of any part of the agreement -- rather, the written contract was to remain in full force and effect. The above contract language on the issue of integration is unambiguous. Pursuant to that contract language, the subcontract is an integrated contract. Furthermore, there is no evidence to suggest that the parties intended anything other than to enter into the integrated agreement as described under this section of the contract.

Memorandum in Support of Motion for Rule of Law and Partial Summary Judgment       Page 4 of 10
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (JKS)

B. **The Subcontract Is A Unit Price Contract Pursuant To The Contract Language And The Law Of Contract Interpretation.**

Contract interpretation is ordinarily a question of law for the court to determine. Norville v. Carr-Gottstein Foods Co., 84 P.3d 996, 1000 (Alaska 2004). The goal of contract interpretation is to determine and enforce the reasonable expectations of the parties. Id. at 1004. To ascertain the meaning of the contract, the court examines the contract language, case law interpreting similar language, and relevant extrinsic evidence, including the conduct of the parties. Id. Clear and unambiguous terms of a contract may be interpreted by the general and accepted usage of the trade or business involved. Stock & Grove, Inc. v. Juneau, 403 P.2d 171, 176 (Alaska 1965).

The language in the subcontract is not ambiguous. Specifically, with regard to payment to the subcontractor under the subcontract, the contract language provides:

> The CONTRACTOR, for the full, complete, and faithful performance of the SUBCONTRACT, agrees to pay the SUBCONTRATOR:
>
> (a)   Lump sum of
>
> (b)   Unit Prices as set forth below which on the basis of estimated quantities will involve a gross contract price of approximately **PER ATTACHED FAX QUOTATION** AND 00/100 DOLLARS **Subcontractor will be paid by line items.**

[Exhibit B, p. 1] (emphasis added)  The main contract, the terms of which the subcontract incorporated by reference, also defines "unit price" in unambiguous terms for purposes of the contract:[1]

---

[1] See the discussion below regarding the subcontract and its incorporation of the provisions of the main contract by reference. See also, Exhibit B, p.1, ¶ 2.

Memorandum in Support of Motion for Rule of Law and Partial Summary Judgment   Page 5 of 10
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (JKS)

Eide, Gingras & Pate P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

> Unit Price on the Bid Schedule for each item includes all materials, labor, equipment, tools, quality control, testing, mobilization, demobilization, overhead, profit, bonding, and submittals not included in the bid schedule, for a complete work item IAW the specifications. Quality control, supervision and all overhead issues should be imbedded in each line item of work.

[Exhibit A, p. 3, § 1.2.1] Pursuant to the language of both the subcontract and the main contract, which the subcontract incorporated by reference, the subcontract was a unit price contract.

The Alaska Supreme Court has interpreted a "unit price" in this context to include the price of material, as well as the costs of labor and equipment incurred in placing the material. Lease Construction Co. & Assoc. v. Holly, 725 P.2d 712, 718 (Alaska 1986). In Lease, a subcontractor brought an action against a contractor seeking payment of amounts allegedly owed under a construction subcontract, and the contractor counterclaimed for alleged excess expenditures by the subcontractor. Id. at 714. The dispute involved the interpretation of the term "unit price" in the subcontract, which established a "unit price" for backfill. Id. at 718. While the trial court concluded that the term "unit price" did not include the costs of labor and equipment incurred in placing the material, the Supreme Court disagreed and concluded that the term "unit price" incorporates estimated labor and equipment costs. Id. The court further noted that there is evidence in the usage of the trade that "such unit prices incorporate labor and equipment costs and profit." Id.

With regard to subparagraph (b) of the subcontract, the primary owner of GMW testified that this is the language for a unit price contract. [Exhibit D, Deposition of Glen

Eide, Gingras & Pate P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

Memorandum in Support of Motion for Rule of Law and Partial Summary Judgment    Page 6 of 10
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (JKS)

F. Johnson at 14:2-13] In addition, the government engineer on the project testified as follows when questioned by counsel for Kanag'iq with regard to the general and accepted usage of the language of subparagraph (b) and the language of the fax quotation attached to the subcontract:

> Q: . . . I'd like to direct your attention to the language in subparagraph B (sic) where it says unit prices as set forth below which -- which on the basis of estimated quantities will involve a gross contract price of approximately, per attached fax, quotation, subcontractor will be paid by line items. Do you . . .
> A: Uh-huh. (affirmative)
> Q: . . . see that language?
> A. Yes.
> Q: Okay. And then you see the attachment to the contract?
> A: Yes. This looks like the one - this looks like . . .
> Q: The same format as the unit price schedule that would be involved in the prime contract?
> A: It looks identical to it.
> Q: Assuming it's not the same numbers but it's the same format, does that appear to you . . . to be a unit price contract?
> A: Yes.
> Q: Would you think that anyone with experience in the construction industry would interpret that as a unit price contract?
> A: Yes.

[Exhibit E, Deposition of Steve Frere at 25:2-24] The fax quotation attached to the subcontract has columns for quantity, price per unit, contract unit price, and total dollar amount. [Exhibit B, pp. 6-13] The fax quotation supports a unit price contract.

The contract language, the case law interpreting similar language, and testimony regarding the general and accepted trade usage of the contract language establish that the subcontract is a unit price contract. With regard to relevant extrinsic evidence regarding the meaning of the contract, there is no relevant extrinsic evidence with regard to the term

Memorandum in Support of Motion for Rule of Law and Partial Summary Judgment   Page 7 of 10
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (JKS)

"unit price" and the meaning of that term in this context. There is no evidence that the parties intended to enter into anything other than a unit price contract. As a matter of law, the subcontract is a unit price contract.

C. **Because The Subcontract Incorporated By Reference The Provisions Of The Main Contract, The Subcontract Was Extended By Option With The Main Contract.**

The subcontract incorporated by reference the provisions of the main contract. Specifically, paragraph 2 of the subcontract provides:

> In consideration thereof, the SUBCONTRACTOR agrees as follows:
>
> 1. * * *
>
> 2. To be bound by all laws, government regulations, and orders, and all provisions of the MAIN CONTRACT which provisions are incorporated by reference and to be bound by the provisions attached hereto.

[Exhibit B, p. 1, ¶ 2] GMW does not appear to dispute that the subcontract incorporated by reference the provisions of the main contract. Nonetheless, for purposes of clarification, Kanag'iq seeks a judicial ruling that the subcontract incorporated by reference the provisions of the main contract, and the subcontractor was bound by those provisions.

The main contract included an option to extend the term of the contract beyond the base year, providing as follows:

**OPTION TO EXTEND THE TERM OF THE CONTRACT**

For the purposes of this clause the blanks(s) is/are completed as follows:
(a)   within **15 days**
(b)   not to exceed **36 months**

Memorandum in Support of Motion for Rule of Law and Partial Summary Judgment        Page 8 of 10
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (JKS)

Eide, Gingras & Pate P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

[Exhibit A, p. 5] It is undisputed that the government exercised its option to extend the term of the contract in 2001 and 2002. [Exhibit F and Exhibit G, respectively] Because the subcontract incorporated by reference the provisions of the main contract, the subcontract was extended by option with the main contract in option year one (2001) and option year two (2002). The subcontractor was therefore contractually bound by those extensions of the main contract.

### IV.   CONCLUSION

The language of the subcontract in this case is unambiguous. The contract language regarding modifications of the agreement establishes that the subcontract is an integrated contract and completely contained within the four corners of the document. Within that document, the language regarding unit prices and payment to the subcontractor, the case law interpreting similar language, the general and accepted usage of trade in the construction industry establish that the subcontract is a unit price contract. Finally, the language of the subcontract unequivocally states that the subcontract incorporated by reference all provisions of the main contract, and the subcontractor was to be bound by those provisions. Therefore, the subcontract was extended by option with the main contract in option years one and two, and the subcontractor was so bound.

There is no genuine issue of material fact with regard to any of the contractual issues set forth above. Kanag'iq therefore seeks a judicial ruling on each of those contractual issues as a matter of law.

Memorandum in Support of Motion for Rule of Law and Partial Summary Judgment   Page 9 of 10
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (JKS)

DATED at Anchorage, Alaska this 19th day of June 2006.

EIDE, GINGRAS & PATE, P.C.
Attorneys for Defendants
Kanag'iq Construction Co., Inc.
And Western Surety Company

By:  s/Thomas S. Gingras
 Thomas S. Gingras
 425 G Street, Suite 930
 Anchorage, AK  99501
 Phone:  (907) 279-0930
 Fax:     (907) 279-0933
 E-mail: tsgingras@egpalaska.com
 Alaska Bar No. 7811098

**CERTIFICATE OF SERVICE**

DONNA CHARTER certifies as follows:

That I am a legal secretary employed by the law firm of Eide, Gingras & Pate, P.C. That on this 19th day of June 2006, I served

 [x] electronically

a true and accurate copy of the foregoing document upon the following counsel of record:

Attorneys for Plaintiff:

Sarah J. Tugman, Esq.
2509 Eide Street, Suite 4
Anchorage, Alaska  99503

EIDE, GINGRAS & PATE, P.C.

By  s/Donna Charter
 Donna Charter

F:\431\05\pleadings\mot rule of law memo.doc

Memorandum in Support of Motion for Rule of Law and Partial Summary Judgment
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (JKS)

Page 10 of 10