IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES for the use of GMW Fire Protection, Inc., an Alaska Corporation , <br><br> Plaintiff, <br><br> vs. <br><br> KANAG'IQ CONSTRUCTION CO., INC., an Alaska Corporation and WESTERN SURETY COMPANY, a South Dakota Corporation, <br><br> Defendants. | Case No. 3:05-cv-170 TMB <br><br><br> ORDER DENYING PARTIAL SUMMARY JUDGMENT |

**I.  Motion Presented**

The United States for the use of GMW Fire Protection, Inc. ("GMW") alleges that GMW provided materials and performed services under a subcontract with Defendant Kanag'iq Construction Co., Inc. ("Kanaq'iq"), but there remains an outstanding balance owed under the contract.  GMW seeks recovery of the outstanding balance.  Kanaq'iq counterclaims, alleging overcharges by GMW.  At Docket No. 23, Kanag'iq and co-defendant Western Surety Company move for a rule of law and partial summary judgment with respect to particular provisions of the subcontract between Kanag'iq and GMW.  Because the Court believes that there are genuine issues of material fact on the question of modification and on how the subcontract should be interpreted, Kanag'iq's motion for partial summary judgment is hereby DENIED.

## II.  Background

On September 29, 2000, the United States entered into a contract (the "Main Contract") with Kanaq'iq to construct fire protection systems on Elmendorf Air Force Base in Alaska.  The Main Contract contains an option to extend.  This option was exercised twice, and the Main Contract was extended through September 28, 2003.

Kanaq'iq and GMW entered into a subcontract (the "Subcontract") with the duration specified as "for base year from September 29, 2000 to September 29, 2001."  Under the Subcontract, GMW was to provide services in connection with the Main Contract.  GMW agreed:

> To be bound by all laws, government regulations, and orders, and all provisions of the MAIN CONTRACT which provisions are incorporated by reference and to be bound by the provisions attached hereto.

With respect to payment, the Subcontract reads that:

> The CONTRACTOR, for the full, complete, and faithful performance of this SUBCONTRACT, agrees to pay the SUBCONTRACTOR:
>
> (a)  Lump Sum of
> (b)  Unit Prices as set forth below which on the basis of estimated quantities will involve a gross contract price of approximately **PER ATTACHED FAX QUOTATION** AND 00/100 DOLLARS **Subcontractor will be paid by line items.**
>       ($         )

Under the heading MODIFICATIONS, the Subcontract states that:

> No modifications of this agreement and no waiver of any rights under this SUBCONTRACT shall be valid or binding on the parties unless the same be in writing. Failure of the CONTRACTOR to insist upon strict performance of the SUBCONTRACT, or to exercise any option herein conferred in any one or more instances, shall not be construed to be a waiver of any such, or any other covenants or agreements, but the same shall be and remain in full force and effect.

## III.  Standard of Review

A party may move for summary judgment as to "all or any part" of a claim.[1] The standard and procedures for partial summary judgment are the same as for summary judgment.[2] Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law.[3]

### IV. Discussion

Kanaq'iq asks this Court to interpret the Subcontract in several respects. First, Kanaq'iq contends that the Subcontract is an integrated contract, subject only to written modification by the parties. As such, Kanaq'iq argues that this Court should conclude that the contract is a unit price contract and exclude any evidence that the parties intended to vary the price terms. For textual support, it points to the language of the Subcontract calling for unit pricing and to the modification clause reading:

> No modifications of this agreement and no waiver of any rights under this SUBCONTRACT shall be valid or binding on the parties unless the same be in writing. Failure of the CONTRACTOR to insist upon strict performance of the SUBCONTRACT, or to exercise any option herein conferred in any one or more instances, shall not be construed to be a waiver of any such, or any other covenants or agreements, but the same shall be and remain in full force and effect.

GMW does not dispute that the Subcontract is a unit price contract by its terms. Instead, it argues that the parties never enforced the unit price terms of the contract. GMW claims that the

---

[1] FED R. CIV. P. 56(a)-(b).

[2] *Caine v. Duke Communications Intern.,* No. CV-95-0792 JMI (MCX), 1995 WL 608523, at *1 (C.D.Cal. Oct. 3, 1995).

[3] FED R. CIV. P. 56(c); *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000).

3

parties modified the contract by conduct and Kanaq'iq waived its right to enforce the unit price terms of the contract.  GMW supports its arguments with documentary evidence and deposition testimony suggesting that the parties did not operate as if a unit price contract was in place, but instead used estimates and lump sum pricing throughout their course of dealing.  For example, GMW president Glen Johnson testified that the Subcontract was not handled as a unit price contract from its inception but was a "bottom line project every time."   Kanaq'iq employee Phil Young testified that the parties basically used bottom line totals instead of line items.  And Kanaq'iq employee William Jury acknowledged that the delivery orders did not contain line items for some work that was actually performed by GMW, suggesting that the parties did not strictly adhere to unit pricing.

Kanaq'iq counters that, since the Subcontract is an integrated contract unambiguous in its terms about unit pricing, the parol evidence rule applies to exclude any evidence presented by GMW about modification.  But Kanaq'iq's argument rests on a misapprehension of the parol evidence rule.  Under the parol evidence rule, "an integrated written contract cannot be varied or contradicted by <u>prior</u> negotiations or agreements."[4]  The rule "exists to fix the terms of the contract at the time of its execution" and therefore "does not preclude the admission of evidence, oral or written, of the subsequent modification or termination of the integrated agreement."[5]

This case arises under the Miller Act, and the Ninth Circuit has held that in Miller Act cases, "state [substantive] law controls, at least as to subcontracts to which the United States is not

---

[4]  *Still v. Cunningham,* 94 P.3d 1104, 1109 (Alaska 2004)(emphasis added).

[5]  11 Richard A. Lord, Williston on Contracts § 33:14 at 615 (4th ed.1999).

a party."[6] Alaska law therefore governs. Under Alaska law, "modification of a written contract may be effected either through subsequent conduct or oral agreements."[7] And "[w]hether a modification has occurred is a question of fact."[8] Since GMW has presented sufficient evidence to raise a genuine issue of material fact on the question whether the contract was modified by the conduct of the parties, summary judgment is inappropriate.

The fact that the Subcontract requires that modifications or waivers of rights be in writing does not change this conclusion. As explained in *American Jurisprudence*:

> Parties to a contract are not forever locked into its terms. Accordingly, parties to an existing contract may, by mutual assent, modify it, provided the modification does not violate the law or public policy, and provided that there is consideration for the new agreement or that it satisfies a statute or is made under circumstances making consideration unnecessary. Accordingly, it is entirely competent for the parties to a contract to modify or waive their rights under it and engraft new terms upon it. Furthermore, the parties to a contract are ordinarily as free to change it after making it as they were to make it in the first instance, notwithstanding provisions in it designed to hamper such freedom, or regardless of contractual provisions to the contrary.[9]

Kanaq'iq also contends that, since the Subcontract incorporated the provisions of the Main Contract by reference, the Subcontract was automatically extended with the Main Contract in option years one and two. The Court also declines to enter partial summary judgment on this theory. While under the Subcontract, GMW agreed to be bound by all provisions of the Main

---

[6] *U. S. ex. rel. Bldg. Rentals Corp. v. Western Cas. & Sur. Co.*, 498 F.2d 335, 338 n.4 (9th Cir. 1974)

[7] *Alaska Statebank v. Fairco* 674 P.2d 288, 292 (Alaska 1983).

[8] *Id.*

[9] 17A AM. JUR. 2D *Contracts* § 507 (2007).

Contract, the Subcontract expressly states that it is "for base year from September 29, 2000 to September 29, 2001." There are no references to any extensions of the Subcontract. While it is possible that by incorporating the Main Contract by reference the parties intended for the Subcontract to automatically extend if the Main Contract was extended, the Subcontract could also be interpreted as being limited in duration. Contract interpretation, while usually a question of law, becomes a question for the trier of fact when the contract itself is susceptible to two meanings.[10] Because it is ambiguous whether the Subcontract incorporates by reference the option extension provisions of the Main Contract, the Court also DENIES Kanaq'iq's request for this Court to conclude that the Subcontract was automatically extended during option years one and two.

## V. Conclusion

For the foregoing reasons, the motion for a rule of law and partial summary judgment at Docket No. 23 is hereby DENIED.

Dated at Anchorage, Alaska, this 1st day of May, 2007.

/s/ Timothy Burgess
Timothy M. Burgess
United States District Judge

---

[10] *Kay v. Danbar, Inc.*, 132 P.3d 262, 269 (Alaska 2006).