IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES for the use of GMW Fire Protection, Inc., an Alaska Corporation,<br><br>    Plaintiff,<br><br> vs.<br><br>KANAG'IQ CONSTRUCTION CO., INC., an Alaska Corporation and WESTERN SURETY COMPANY, a South Dakota Corporation,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. A05-170 Civil (TMB) |

## APPENDIX F - DEFENDANTS' FINAL WITNESS LIST

Defendants, KANAG'IQ CONSTRUCTION CO., INC., an Alaska Corporation and WESTERN SURETY COMPANY, by and through their attorneys, Eide & Gingras, P.C., hereby submit their final witness list pursuant to the Court's pre-trial order.

With respect to each witness listed, Defendants expect the witness to describe their education, training, and employment history. While Defendants are attempting to describe in summary form anticipated testimony, such summaries are necessarily imperfect because witnesses sometimes do unexpected things. Having said that, Defendants' final witness list, in the order expected to be called, is as follows:

  1.  Jamie Thurman
     9473B Alissa Circle
     Anchorage, AK  99515
     (907) 632-8982

Appendix F - Defendants' Final Witness List
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

Page 1 of 14

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

Ms. Thurman worked for the Plaintiff and can testify about statements that Glen Johnson made regarding GMW's overcharging Defendant Kanag'iq Construction Co., Inc. Mr. Johnson stated that he had overcharged Kanag'iq, felt like a jerk about it, and from the context, Jamie Thurman understood that he was talking about overcharges in the amount of hundreds of thousands of dollars, not insignificant amounts. Further, she may testify that Glen Johnson tried to hire some of Kanag'iq's employees, particularly Chieko Jury and Jamie Thurman.

> 2.    Gretchen Grau
>        GMW Fire Protection
>        6108 MacKay Street
>        Anchorage, AK  99518
>        (907) 336-5000

On information and belief, Ms. Grau is the accountant/bookkeeper in house at GMW. She is expected to testify, in one form or another, that she was aware of and/or instructed to overcharge Kanag'iq in conjunction with the project which is the subject of this litigation.

> 3.    Thomas Johnson
>        GMW Fire Protection
>        6108 MacKay Street
>        Anchorage, AK  99518
>        (907) 336-5000

Mr. Johnson will testify that overcharges by GMW occurred, that he heard Gretchen Grou talk about overcharges by GMW to Kanag'iq, and that Glenn Johnson told him to charge Kanag'iq for materials that were going to be used on other projects.

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

He is expected to testify consistently with his deposition and his affidavit.

    4.     Steve Frere, Engineer
           Elmendorf AFB
           Anchorage, AK
           (907) 522-5599

Mr. Frere is expected to testify in a manner consistent with his deposition. He is expected to testify that the contact between the Government and Kanag'iq was a unit price contract. That the contact between Kanag'iq and GMW, once he had seen it, was a unit price contract on its face. That unit price contracts are preferable for the Government because they are easier to audit and are transparent. That, at one point, he thought Kanag'iq had underpaid GMW, conducted an investigation, and in fact learned that Kanag'iq had not underpaid GMW and he apologized to Kanag'iq for having conducted the investigation.

He is further expected to testify that in connection with audits done of installed items, those audits were not requested by Kanag'iq in conjunction with this litigation, that they were supposed to be done, during some phases of the project (the implication being that his failing health impaired his ability to conduct audits in the way he might ordinarily have done), that the audit with respect to the number of items installed is accurate but that he cannot verify the math with respect to over-billing or over-payment. He will also testify that he was unhappy with some of Kanag'iq's paperwork, in particular with respect to real estate transfer forms, but that the Government was satisfied that it had received what it paid for and that in terms of fire protection Elmendorf went

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

Appendix F - Defendants' Final Witness List
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

Page 3 of 14

from being last to being first.

He will also testify that he is familiar with the difference between a fixed price contract and a unit price contract and explain those differences. He will testify that in a unit price contract, that the unit price on the bid schedule includes everything. He will testify that there is no add-on for labor or submittals or any other matter that is not included in the bid schedule for the unit pricing. He will also testify that quality control supervision and all overhead issues would be imbedded in each line item of work in the schedule. In sum, he will testify that the unit price on the unit price schedule is the price you get for each item on the unit price schedule. He will testify that there is a prime contract between the United States and Kanag'iq and then, as he understood it, a subcontract between Kanag'iq and GMW. He will testify that he would ordinarily expect a general contractor with a unit price contract to have a unit price contract with a subcontractor. Further, if Kanag'iq had not hired GMW, GMW would not have gotten the work.

If anything arose that was unexpected and not in the unit price schedule, there should be a negotiation that would result in a new item being added to the unit price schedule if it was allowed at all.

He will testify that extras would not be paid for if they were not included in the unit price schedule.

He will testify that when he undertook the investigation of Kanag'iq, he was using

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

Appendix F - Defendants' Final Witness List
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

Page 4 of 14

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

a stereotype of the prime contractor stiffing the subcontractor and that he initially believed that Kanag'iq had been holding onto GMW's money.  He will testify that he realized, after Mr. Jury wanted an audit, that he was mistaken in his assumption that there may have been a fixed priced contract between Kanag'iq and GMW.  He will further testify that his investigation was based upon a fixed price contract.  Mr. Frere came to discover that the contract between Kanag'iq and GMW was a unit price type of contract.  At the end of his investigation, Mr. Frere concluded that he could not find anything wrong done by Kanag'iq with respect to GMW, that he had gone into the investigation with a prejudice, which backfired on him.

He will testify that the form of the contract between Kanag'iq and GMW, and the unit price schedules utilized in conjunction with it, are a unit price contract and that anyone with experience in the construction industry would interpret it as a unit price contract.

He will also testify that time pressures led to funding being handled on an expedited basis with amounts being shifted back and forth between different orders with the understanding that it would all be sorted out at the end of the contract on a unit price basis.  He will testify that he e-mailed Mr. Jury saying it was worse than he thought that his boldest conclusions were based not only on a fictitious contract but on three more bogus assumptions.  He hoped that Glen didn't spring for champagne and dinner for his staff at the Corsair based on what Steve said about building a case against KCCI for

fraud. He did not want to be sued.

Mr. Frere then will testify that if Kanag'iq has a contract similar to what Kanag'iq has with the Government, then he was doing what he should be doing. He will also testify that in the context of this project, the contract between Kanag'iq and GMW was and had to be an IDIQ contract containing unit prices as no other contracting vehicle would have worked. IDIQ means indefinite delivery indefinite quantity. He will testify that that was the type of the contract that the Government and Kanag'iq had and that it was also the type of contract Kanag'iq and GMW had. He will also testify that the contract between GMW and Kanag'iq was nowhere near to being a fixed price contract. He will testify that the submittals from GMW to Kanag'iq were based on unit pricing. He will testify that the contract between the Government and Kanag'iq had a one-year base period and two or three option years. He will also testify that with respect to the ratio between labor and materials, he would expect it to be no more than fifty-fifty and, often, thirty to forty percent for labor and sixty to seventy percent for materials. He will also testify that Sarah Tugman effectively told him that if he does counts he had better watch out or words to that effect. He will testify that however contracts were handled in the field because of time pressures or other reasons, he anticipated that an audit would have to be performed to reconcile the differences in line items and quantities. Further, that there is no way to have an accurate accounting except by doing an audit in accordance with the contract between Kanag'iq and the Government. He will also testify

that some money was effectively given back to the Government because of the deletion of some items. He will also testify that because of time urgency, he did not have time to go out to the project and do an estimate. He will testify that Mr. Jury never asked him to do a count because of the litigation. Instead, he felt that he had to do the audit. Mr. Frere will also testify that managing the project the way it was managed did not turn the prime contract into a lump sum contract instead of a unit price contract. He will also testify that there was no way he would be able to sort out the count until the end of the project when a survey was done and that not doing counts on a monthly or weekly basis did not change the nature of the contract.

He will also testify that if things went badly on the project, the Government would sue Kanag'iq, not GMW, so that Kanag'iq had the legal exposure and Kanag'iq was the entity that posted a bond to be responsible for the work. He will also testify that Kanag'iq was running the project *vis a vie* GMW in the same way that the project was being run between the Government and Kanag'iq because of the time pressure, the need to get it done, and sorting out the items at the end of the project. He will also testify that at least at one point, GMW was behind schedule. He will testify that, by way of example, delivery order 5017 had a line item for a package submittal for Fifty-Four Thousand Dollars ($54,000) which was patent error.

5.      Glen Johnson
        GMW Fire Protection
        6108 MacKay Street
        Anchorage, AK  99518
        (907) 336-5000

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

Mr. Johnson is expected to testify that through his work experience, he became familiar with the relationship that existed between general contractors, subcontractors, and sub-subcontractors. He will testify that the owners of GMW are himself and Mark **Burnick**, his ex-brother-in-law. He never asked to see the prime contract in the project, but that he became aware that contract was a unit price contract. With respect to GMW's subcontract with Kanag'iq, he will testify that it was executed in October of 2000 and that the language in the contract is the language for a unit price contract. He will testify that he signed contracts before, had been in the industry for some period of time, had not actually been involved in signing and reviewing many contracts, but participated in negotiation of the subject subcontract and read it before he signed it. He did not consult an attorney and that the exhibit to the subcontract with Kanag'iq is the unit price schedule. He will testify that the allegations in the complaint with respect to dates and claims made are true. He will testify that the complaint by GMW was filed on or about July 15, 2005. He will also testify that unit price essentially includes everything, including, but not limited to quality control supervision and overhead issues being imbedded in each line item of works and that each such line item would also include the cost of any equipment necessary to install an item. He was aware that their option years but will deny that he is performing work under the terms of the subcontract. He will deny ever telling anyone, or implying, that GMW overcharged Kanag'iq. He will deny using words to that effect in the presence of anybody.

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

He will acknowledge making some errors with respect to the line items in some estimates. He will testify that some of GMW's numbers got corrupted and that there were therefore errors, but that the prices that should have been used throughout the project are the prices included in the subcontract and exhibit A to it. He will testify that he was not aware that engineering was not considered part of the project even though he was trying to bill for engineering. He will deny that in a unit price contract engineering cost should be embedded in the line item number for the component being installed. He will testify that ordinarily the breakdown between time and materials is fifty-fifty. He will also acknowledge that he has said that in the real world engineering is thirty-eight to forty percent of the job. He will testify that one line item that he considers engineering work is a line item for package submittal. He will testify that he does not know what the total amount is that he billed Kanag'iq for engineering. He will testify that he never told anyone at Kanag'iq that GMW was no longer under contract after the base year and that Kanag'iq paid GMW a little over One Million Five Hundred Thousand Dollars ($1,500,000). He will testify that GMW's invoices to Kanag'iq were not itemized and that Kanag'iq would not be able to check their invoice amounts against the schedule prices in the contract. He will testify that the price schedule for the subcontract was the original pretend job that GMW bid to Kanag'iq for them to decide which contractor they were going to use. He will testify that he had never worked with a unit price contract before and never asked anyone what a unit price contract was. He will testify that labor

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

done by GMW employees is reflected in the certified payrolls but that engineers or designers are not.  He will testify that he lowered the prices for the snow barn and the Susitna Club because of Kanag'iq's objections to the invoices provided by GMW.  He will testify that he was told that Mr. Jury was requiring him to recount all the items on the projects.  He will testify that he refused to do a recount and that Mr. Jury told him that if he did not do a count he would not get paid.  Mr. Johnson will testify that in a unit price contract the general contractor should not have to pay for items that are not installed.  He will testify that GMW's invoices did not show the line items that were being billed for.  He will testify that he invoiced Kanag'iq for engineering work.  Mr. Johnson never sent a letter to Kanag'iq advising Kanag'iq that when he used the word contract he did not mean the subcontract.  He will testify that he tried to make the quantities installed matched the estimate that he gave Kanag'iq because he was trying to be fair.  He denies ever telling Jamie Thurman that he knew that he was overcharging Kanag'iq and that he felt like a jerk.  He will not say that she is lying if she says that.  He will also testify that there is nothing in the subcontract indicating that GMW was suppose to be paid based upon the percentage of work that it did and that he never asked Kanag'iq to amend the subcontract.

6.  Phil Young                              *Attorney/Client Privilege*
    c/o Eide & Gingras, P.C.
    425 G Street, Suite 930
    Anchorage, AK  99501
    (907) 279-0930

Mr. Young is expected to testify that Kanag'iq had a unit price contract with the government and that Kanag'iq also had a unit price contract with GMW. He will also testify to the procedure followed during the course of the project and how work was authorized and priced. He is expected to testify that GMW invoices were titled with the words contract amount but that that does not necessarily mean the invoice accurately reflects the amount due under the contract. He will also testify on particular work orders he would take the agreed to unit prices from Glen Johnson, apply them to Kanag'iq's spreadsheet and add Kanag'iq's line items if Kanag'iq had functions on the project and turn it into Steve Frere for signature. He will testify that when he refers to a bottom line in using the Excel spreadsheet and the unit price quantities, the bottom line would be the estimated total for the quantity of units entered into the spreadsheet.

He will testify that in 2004 things were moving very quickly and that Steve Frere would allocate money to the project so that it was not lost, the work was done, and that unit pricing was the method for calculating the amount due for particular delivery orders wherever money had originally been allocated.

However the money was allocated, he will testify that it still came down to unit pricing. He will testify that the scope of work for Kanag'iq and GMW was to build the job per the units and put down the accurate units and they would get paid for those units. And that allocating funds between one delivery order and another was Steve Frere's problem.

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

7.    Ray Hamilton
      Meridian Management, Inc.
      3940 Arctic Boulevard, Suite 102
      Anchorage, AK  99503
      (907) 677-2601

Mr. Hamilton will testify regarding Plaintiff's performance of the contract and its

billing practices.  He is expected to testify that GMW made errors in its billings because

they did not correct tract the unit price schedule which was an exhibit to the subcontract

between Kanag'iq and GMW.

8.    Dave Beck
      Chinook Fire Protection
      7636 Hillway Way
      Anchorage, AK 99516
      (907) 344-3473

Mr. Beck is expected to testify as to the count of sprinkler system units in the

snow barn, that at least some portion of the work billed, including particularly one line of

sprinklers in an area of the snow barn was not actually installed.

9.    William Jury                    ***Attorney/Client Privilege***
      c/o Eide & Gingras, P.C.
      425 G Street, Suite 930
      Anchorage, AK  99501
      (907) 279-0930

Mr. Jury is expected to testify consistently with his deposition and specifically

that:

1.    The contract between the United States and Kanag'iq was a unit price

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

contract.

2.    The contract between Kanag'iq and GMW was a unit price contract.

3.    That the contract between Kanag'iq and the United States had a one year base term and two additional option years, that those option years were exercised and that GMW continued to work under its subcontract for Kanag'iq for option years one and two.

4.    Chieko Jury brought to his attention the fact that GMW was over-billing Kanag'iq and that Kanag'iq had over-paid GMW.

5.    Until that discovery was made, Mr. Jury had authorized the payment of GMW invoices based on the assumption that he was being billed pursuant to the unit price terms of the contract.

The amount over-paid by Kanag'iq based on the information available to him, was at least $287,577.12.

Mr. Jury's deposition in this case was approximately six hours or more and defense counsel anticipates that Plaintiff's counsel will review that deposition in order to prepare for cross-examination of Mr. Jury.

10.    Chieko Jury                    ***Attorney/Client Privilege***
        c/o Eide & Gingras, P.C.
        425 G Street, Suite 930
        Anchorage, AK 99501
        (907) 279-0930

Ms. Jury is expected to testify as the bookkeeper for Kanag'iq and to the amount

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

of Kanag'iq's overpayment to GMW based upon the unit counts performed by Bill Jury,

Steve Frere, and Dave Beck.  She is expected to testify that the amount of the overpayment

by Kanag'iq to GMW is at least $287,577.12.

DATED at Anchorage, Alaska this _____ day of November 2007.

EIDE & GINGRAS, P.C.
Attorneys for Defendants
Kanag'iq Construction Co., Inc. and
Western Surety Company

By:    /s/Thomas S. Gingras
        Thomas S. Gingras
        425 G Street, Suite 930
        Anchorage, AK  99501
        Phone:  (907) 279-0930
        Fax:  (907) 279-0933
        E-mail:  thomas.gingras@egpalaska.com
        Alaska Bar No.:  7811098

**CERTIFICATE OF SERVICE**

I am a legal secretary employed by the law
firm of Eide & Gingras, P.C.  That on this
28th day of November 2007, I served

        [x] Electronically

a true and accurate copy of the foregoing
document upon the following counsel of record:

Sarah J. Tugman, Esq.
2509 Eide Street, Suite 4
Anchorage, AK  99503

EIDE & GINGRAS, P.C.

By    /s/Debby J. (Lee) Allen
        Debby J. (Lee) Allen

F:\431\05\pleadings\Appendice F - Def Final Witness List.DOC

425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

Sarah J. Tugman
Attorney at Law
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Telephone: (907) 677-7889
Fax: (907) 677-9188
e-mail: sjtugman@gci.net
Attorney for GMW Fire Protection, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES for the use of<br>GMW Fire Protection, Inc.,<br>an Alaska Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>KANAG'IQ CONSTRUCTION CO., INC.,<br>an Alaska Corporation and<br>WESTERN SURETY COMPANY, a<br>South Dakota Corporation,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____) Case No. A-05-0170 CV (JKS)

### GMW'S FINAL WITNESS LIST

        Pursuant to the Court's order, Plaintiff GMW Fire Protection,

Inc. Files the following final witness list, lisint the witnesses in

the order they are to be called.

GMW EMPLOYEES

        Glenn Johnson
        GMW Fire Protection, Inc.
        (907) 336-5000

*See* his deposition.  Mr. Johnson will testify as to the contract
with Kanag'Iq and the terms of that contract, how the contract
operated in the field,  his communications with Kanag'Iq, GMW's
price schedules and billings, and the work done on the project by
each of the parties.  He will describe the materials used on the
project and the increase in costs over time, the work done that was
not included in the line items in the contract, and the changes to

PLAINTIFF'S WITNESS LIST - PAGE 1

the work that occurred during construction.  He will summarize
Plaintiff's exhibits and will show the amounts billed by Kanag'Iq to
the government and by GMW to Kanag'Iq.  He will describe his damages
that were incurred as a result of Kanag'Iq's breach of contract.

    Gretchen Grau
    GMW Fire Protection, Inc.
    (907) 336-5000

Ms. Grau will testify as to billing matters and her communications
with KCC.  She will testify that price schedules were sent to KCC
prior to work on each delivery order, that billings were then sent
showing percentage complete on each delivery order, and that payment
was originally received as billed until the point that Kanag'Iq
stopped making payment.  She will testify that Kanag'Iq sent its
subcontractor payment reports indicating contract amounts which
corresponded with the GMW's contract amounts for each delivery
order.  She will testify that complaints about the  billings were
not raised until late into the project after most of GMW's work was
already performed.

The following GMW employees will testify as to history of the
construction project, the materials used, course of construction,
communications between, and work done by the parties.

    Clayton Johnson
    GMW Fire Protection, Inc.
    (907) 336-5000

    Jim Luke
    GMW Fire Protection, Inc.
    (907) 336-5000

    Ward Thomas
    GMW Fire Protection, Inc.
    (907) 336-5000

    Marvin Berg
    GMW Fire Protection, Inc.
    (907) 336-5000

GOVERNMENT EMPLOYEES

These witnesses will testify as to the procedures that were involved
in the Kanag'Iq/government contract and to any familiarity with the
course of construction, GMW's and Kanag'Iq's work on the project,
communications and billing matters.  If agreement as to authenticity

PLAINTIFF'S WITNESS LIST - PAGE 2

is not reached, they will be asked to authenticate certain exhibits.

Steve Frere, Engineer – see his deposition
Project engineer
Elmendorf AFB
(907) 522-5599

Mr. Frere is expected to testify in conformity with his deposition.

Becky Rhodes
Elmendorf AFB
(907) 552-5697

Becky will testify that GMW was a preferred contractor and that the government wanted GMW to continue to work on the project at Elmendorf but that Kanag'Iq failed to perform adequately. Moreover, GMW was asked to perform work over and beyond what was shown in the contract documents.

Lucy A. Teitzel
Contract Manager
Elmendorf AFB
(907) 552-5635

Michelle Jones
Elmendof AFB
(907) 552-5731

OTHER

Dwayne Bertholl or other representatives of:
Windsor Construction
1888 Andreanof Drive
Eagle River, AK 99577

Mr. Bertholl is a representative of the current Elmendorf fire protection systems contractor and can testify as to contract, operations, and course of construction after Kanag'Iq lost the Elmendorf contract. Essentially, the contract is operating the same was it did before, but the contractor is issuing purchase orders for the work to be completed or each delivery order.

EXPERT WITNESS

Barry Steinkrueger
5900 Barry Ave.
Anchorage, AK 99507
(907) 441-2526

PLAINTIFF'S WITNESS LIST – PAGE 3

Mr. Steinkirueger is an expert on cost, installation, programming and maintenance of different fire alarms systems including traditional hard-wired and addressable systems. *See* his prior disclosures.

KANAG'IQ EMPLOYEES

Bill Jury - see his deposition
Kanag'Iq Construction Co.

Phil Young - see his deposition
Kanag'Iq Construction Co.

Julie Foland (Jury) - see her deposition
Kanag'Iq Construction Co.

Ray Hamilton
Kanag'Iq Construction Co.

Mr. Hamilton will be asked to admit his statement that GMW was still owed subtantial sums that have not been paid by Kanag'Iq

The custodian of records for any and all documents for which a stipulation for admission is not available.

Any rebuttal witnesses.

Dated this __ day of November, 2007.

s/ Sarah J. Tugman
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Phone: (907) 677-7889
Fax: (907) 677-9188
E-mail: sjtugman@gci.net
Alaska Bar No.: 8310101

CERTIFICATE OF SERVICE

I hereby certify that on the __ of November, 2007, a copy of the foregoing document was served electronically on Tom Gingras, attorney for Kanag'Iq Construction, Inc.

s/Sarah J. Tugman
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Phone: (907) 677-7889

PLAINTIFF'S WITNESS LIST - PAGE 4

```
Fax: (907) 677-9188
E-mail: sjtugman@gci.net
Alaska Bar No.: 8310101
```

PLAINTIFF'S WITNESS LIST – PAGE 5