Sarah J. Tugman
Attorney at Law
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Telephone: (907) 677-7889
Fax: (907) 677-9188
e-mail: sjtugman@gci.net
Attorney for GMW Fire Protection, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| THE UNITED STATES for the use of GMW Fire Protection, Inc., an Alaska Corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>KANAG'IQ CONSTRUCTION CO., INC., an Alaska Corporation and WESTERN SURETY COMPANY, a South Dakota Corporation,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. A-05-0170 CV (TMB) |

GMW'S RESPONSE TO KANAG'IQ'S
OBJECTIONS TO GMW'S EXHIBITS

　　GMW responds to Kanag'Iq's objections to GMW's exhibits as follows:

Exhibits 1-5.  Before and during the Elmendorf Fire Requirements contract, there was a course of conduct between the parties where GMW provided an estimate, billed, and was paid according to the estimate.  The course of conduct is relevant to the way the parties operated during the Elmendorf contract and with respect to GMW's understanding of the contract and its modification.

RESPONSE TO OBJECTIONS TO EXHIBITS – PAGE 1

<u>Exhibit 8.</u>  This is the identical 8 page document (which states it is a 9 page document, but does not appear to be) that Kanag'Iq has attached to the subcontract document as its Exhibit C, and which it claims is part of the contract between the parties.

<u>Exhibit 9.</u>  While Plaintiff does not believe that the detail on the document covered by the exhibit sticker will be relevant or necessary, another copy of the first page of the document with the exhibit stamp relocated is attached.

<u>Exhibit 10.</u>  While Plaintiff does not believe that the detail on the document covered by the exhibit sticker will be relevant or necessary, another copy of the first page of the document with the exhibit stamp relocated is attached.  Further, the first 7 pages of this exhibit are identical to Defendant's exhibit R and the first page of both documents appears to be the only page with any written notation and the notation states only "Contract Pricing Agreement." Further, the document bears a Bates stamp number indicating that it was contained in Kanag'Iq's contract files and was received by it.

<u>Exhibit 12.</u>  The parties disagree about what constitutes the correct price schedule attachment, if any, to the written subcontract.  Defendant has combined the subcontract document and the attachment that it contends should be attached as its Exhibit C.  Plaintiff has submitted the subcontract without an attachment as Exhibit 12, and three price schedules are submitted as separate exhibits.  A price schedule which was faxed to Kanag'Iq by GMW on

June 5, 2000 (the one attached to the subcontract by Kanag'Iq) is submitted as Plaintiff's Exhibit 8. A price schedule from GMW titled "new price GMW 7-17-00" is submitted as Plaintiff's Exhibit 9. Another price schedule titled "Contract Pricing Agreement," is submitted as Plaintiff's Exhibit 10. Plaintiff contemplates discussion at trial about which document, if any, was attached to the written subcontract.

Exhibit 64. This is an engineer's estimate signed by the project engineer and Kanag'Iq. The fact that it was faxed to Kanag'Iq, and the fax chatter indicates that a cover sheet was attached, does not make the three page document incomplete. The document indicates that it consists of three pages and all three pages are attached.

Exhibit 145. This exhibit is a copy of a page from Kanag'Iq's files as provided to GMW by Kanag'Iq. It is the only copy of the document from Kanag'Iq's file that is available, and the same document, in the same condition, is included in Kanag'Iq's exhibit AB. While it is not illegible, there is some image loss, but not enough to make the exhibit unusable.

Exhibit 147. Same answer as above.

Exhibit 154. Glenn Johnson will authenticate the handwritten entries and explain the document.

Exhibits 155-165. These documents illustrate dealings between Kanag'Iq and other subcontractors on the Elmendorf project and show that estimates were presented to Kanag'Iq by those contractors

before work was performed as GMW presented estimates. Further, it appears that KC Construction was treated much like GMW was by Kanag'Iq. Estimates were accepted, but questions about them were not raised until after the work was long completed.

Moreover, Exhibits 165 and 166 are estimates that Kanag'Iq presented to the government despite its claim that all work was by line items, and the contract with the government was a line item contract. This is clear evidence that the contract did not operate in that manner.

Further, as to Exhibit 155, the notation signed by Phil (Phil Young) that the estimate should have been presented on a line item work sheet is strong evidence to support GMW's claim that Kanag'Iq required it to present its quotes/estimates in that format.

Respectfully submitted this 6th day of December, 2007.

s/ Sarah J. Tugman
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Phone: (907) 677-7889
Fax: (907) 677-9188
E-mail: sjtugman@gci.net
Alaska Bar No.: 8310101

CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December, 2007, a copy of the foregoing document was served electronically on Tom Gingras, attorney for Kanag'Iq Construction, Inc.

s/Sarah J. Tugman
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Phone: (907) 677-7889
Fax: (907) 677-9188
E-mail: sjtugman@gci.net
Alaska Bar No.: 8310101

RESPONSE TO OBJECTIONS TO EXHIBITS - PAGE 4