IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES for the use of GMW Fire Protection, Inc., an Alaska Corporation,<br><br>                   Plaintiff,<br><br>vs.<br><br>KANIG'IQ CONSTRUCTION CO., INC., an Alaska Corporation, and WESTERN SURETY COMPANY, a South Dakota Corporation,<br><br>                   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. A05-170 CI (TMB)<br>) |

## DEFENDANTS' TRIAL BRIEF

Defendants, KANAG'IQ CONSTRUCTION CO., INC. and WESTERN SURETY COMPANY, by and through their attorneys, Eide & Gingras, P.C., submit their Trial Brief in this matter. Trial is scheduled to commence on January 22, 2008.

### FACTUAL BACKGROUND

The United States entered into a government contract ("main contract") with Kanag'iq Construction Co., Inc. ("Kanag'iq") to construct fire alarm and sprinkler systems at Elmendorf Air Force Base in Anchorage. Kanag'iq is the principal on a payment bond required by the government in such contracts. The payment bond is in the amount of Seven Hundred Nine Thousand One Hundred Forty-Eight Dollars and Ninety Cents ($709,148.90). Co-Defendant Western Surety Company is the surety on the bond.

Defendants' Trial Brief                                                                                                         Page 1 of 10
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

There is no dispute that the main contract is a unit price contract and included an option to extend the term of the contract beyond the base year, not to exceed thirty-six (36) months. No part of the main contract is in dispute. Kanag'iq subsequently entered into a subcontract with GMW Fire Protection Inc. ("GMW") to furnish materials and perform services on the fire protection construction project at Elmendorf. The base year for the contracts was September 29, 2000 to September 29, 2001. The construction project was completed in 2004.

The parties disagree on the type and term of the subcontract. Specifically, Kanag'iq claims the subcontract is a unit price contract, while GMW claims it provided a lump sum price for each delivery order. In addition, Kanag'iq claims the term of the contract was extended beyond the base year by incorporation of the main contract, while GMW claims the term of the contract was not extended beyond the base year.

GMW alleges that Kanag'iq has failed to pay Five Hundred Thirty-Three Thousand Eight Hundred Forty-Eight Dollars and Seventy-Seven Cents ($533,848.77) purportedly owed under the subcontract. Kanag'iq denies the allegations and further alleges that GMW overbilled Kanag'iq and Kanag'iq overpaid GMW in an amount in excess of Two Hundred Eighty-Seven Thousand Dollars ($287,000). Kanag'iq further alleges that GMW's overbillings are a breach of the Contract, a breach of the Covenant of Good Faith and Fair Dealing, and a violation of Alaska's Unfair Trade Practices and Consumer Protection Act.

Defendants' Trial Brief  
*The United States for the use of GMW Fire Protection v. Kanag'iq Construction Co., Inc., et al.*  
Case No. A05-170 Civil (TMB)

Page 2 of 10

# LEGAL DISCUSSION

A.   Breach Of Contract

   1.   The Subcontract Is An Integrated Contract Pursuant To The Contract Language.

An integrated contract is one that is intended to describe the entire agreement. Casey v. Semco Energy, Inc., 92 P.3d 379, 383 (Alaska 2004). That is, the contract is the final and complete expression of the parties' agreement. It is Kanag'iq's position that the subcontract in this case is an integrated contract. Specifically, the provisions of the subcontract provide in relevant part:

> No modifications of this agreement and no waiver of any rights under this SUBCONTRACT shall be valid or binding on the parties unless the same be in writing. Failure of the CONTRACTOR to insist upon strict performance of the SUBCONTRACT, or to exercise an option herein conferred in any one or more instances, shall not be construed to be a waiver of any such, or any other covenants or agreements, but the same shall be and remain in full force and effect.

[Subcontract, p. 5] Thus, any modifications to the subcontract or waiver of rights under the subcontract must have been in writing. More specifically, any failure of Kanag'iq to insist upon strict performance of the subcontract was not be construed to be a waiver of any part of the agreement -- rather, the written contract was to remain in full force and effect. The above contract language on the issue of integration is unambiguous. Pursuant to that contract language, the subcontract is an integrated contract. Finally, there is no evidence to suggest that the parties intended anything other than to enter into the integrated agreement as described under this section of the contract.

## 2. The Subcontract Is A Unit Price Contract Pursuant To The Contract Language And The Law Of Contract Interpretation.

Contract interpretation is ordinarily a question of law for the court to determine. Norville v. Carr-Gottstein Foods Co., 84 P.3d 996, 1000 (Alaska 2004). The goal of contract interpretation is to determine and enforce the reasonable expectations of the parties. Id. at 1004. To ascertain the meaning of the contract, the court examines the contract language, case law interpreting similar language, and relevant extrinsic evidence, including the conduct of the parties. Id. Clear and unambiguous terms of a contract may be interpreted by the general and accepted usage of the trade or business involved. Stock & Grove, Inc. v. Juneau, 403 P.2d 171, 176 (Alaska 1965).

It is Kanag'iq's position that the language in the subcontract is not ambiguous. Specifically, with regard to payment to the subcontractor under the subcontract, the contract language provides:

> The CONTRACTOR, for the full, complete, and faithful performance of the SUBCONTRACT, agrees to pay the SUBCONTRATOR:
>
> (a)  Lump sum of
>
> (b)  Unit Prices as set forth below which on the basis of estimated quantities will involve a gross contract price of approximately **PER ATTACHED FAX QUOTATION AND 00/100 DOLLARS Subcontractor will be paid by line items.**

[Subcontract, p. 1] (emphasis added) The main contract, the terms of which the subcontract incorporated by reference, also defines "unit price" in unambiguous terms for purposes of the contract:

Eide & Gingras, P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

> Unit Price on the Bid Schedule for each item includes all materials, labor, equipment, tools, quality control, testing, mobilization, demobilization, overhead, profit, bonding, and submittals not included in the bid schedule, for a complete work item IAW the specifications. Quality control, supervision and all overhead issues should be imbedded in each line item of work.

[Main Contract, p. 3] It is Kanag'iq's position that pursuant to the language of both the subcontract and the main contract, which the subcontract incorporated by reference, the subcontract was a unit price contract.

The Alaska Supreme Court has interpreted a "unit price" in this context to include the price of material, as well as the costs of labor and equipment incurred in placing the material. Lease Construction Co. & Assoc. v. Holly, 725 P.2d 712, 718 (Alaska 1986). In Lease, a subcontractor brought an action against a contractor seeking payment of amounts allegedly owed under a construction subcontract, and the contractor counterclaimed for alleged excess expenditures by the subcontractor. Id. at 714. The dispute involved the interpretation of the term "unit price" in the subcontract, which established a "unit price" for backfill. Id. at 718. While the trial court concluded that the term "unit price" did not include the costs of labor and equipment incurred in placing the material, the Supreme Court disagreed and concluded that the term "unit price" incorporates estimated labor and equipment costs. Id. The court further noted that there is evidence in the usage of the trade that "such unit prices incorporate labor and equipment costs and profit." Id.

With regard to subparagraph (b) of the subcontract, quoted above, the primary owner of GMW testified that this is the language for a unit price contract. [Deposition of

Glen F. Johnson at 14:2-13] In addition, the government engineer on the project testified to the same thing. [Deposition of Steve Frere at 25:2-24] It is Kanag'iq's position that the contract language, the case law interpreting similar language, and testimony regarding the general and accepted trade usage of the contract language establish that the subcontract is a unit price contract. There is no evidence that the parties intended to enter into anything other than a unit price contract.

> **3.   Because The Subcontract Incorporated By Reference The Provisions Of The Main Contract, The Subcontract Was Extended By Option With The Main Contract.**

The subcontract incorporated by reference the provisions of the main contract. Specifically, paragraph 2 of the subcontract provides:

> In consideration thereof, the SUBCONTRACTOR agrees as follows:
>
>   1.   * * *
>
>   2.   To be bound by all laws, government regulations, and orders, and all provisions of the MAIN CONTRACT which provisions are incorporated by reference and to be bound by the provisions attached hereto.

[Subcontract, p. 1] It is Kanag'iq's position that the subcontract incorporated by reference the provisions of the main contract, and the subcontractor was bound by those provisions.

The main contract included an option to extend the term of the contract beyond the base year, providing as follows:

**OPTION TO EXTEND THE TERM OF THE CONTRACT**

For the purposes of this clause the blanks(s) is/are completed as follows:

(a)   within **15 days**

(b)   not to exceed **36 months**

[Main Contract, p. 5]  It is undisputed that the government exercised its option to extend the term of the contract in 2001 and 2002.  It is Kanag'iq's position that because the subcontract incorporated by reference the provisions of the main contract, the subcontract was extended by option with the main contract in option year one (2001) and option year two (2002).  The subcontractor was therefore contractually bound by those extensions of the main contract.

B.   **Breach Of The Covenant Of Good Faith And Fair Dealing**

In Alaska law, an implied covenant of good faith and fair dealing is read into every contract.  See Alaska Constr. & Eng'g, Inc. v. Balzer Pacific Equip. Co, 30 P.3d 932 (Alaska 2006).  The covenant of good faith and fair dealing applies to government contracts as well as private contracts.  See Northwest Technical Resources Inc., v. Bechtel Hanford, 157 Fed. Appx. 965 (C.A.9 2005).

The covenant of good faith and fair dealing provides that neither party will do anything that will injure the right of the other to receive the benefits of the agreement.  Guin v. Ha, 591 P.2d 1281, 1291 (Alaska 1979).  It is Kanag'iq's position that GMW's misrepresentations to Kanag'iq with respect to GMW's billing practices injured the right of Kanag'iq to receive the benefits of the agreement.  William Jury, owner of Kanag'iq, will testify that GMW overbilled Kanag'iq and, as a result, Kanag'iq overpaid GMW in an amount in excess of Two Hundred Eighty-Seven Thousand Dollars ($287,000).  It is

Kanag'iq's position that the overbilling and the consequent overpayment injured the right of Kanag'iq to receive the benefits of the agreement, in breach of the covenant of good faith and fair dealing.

**C.    Violation Of Alaska's Unfair Trade Practices Act**

Alaska law prohibits unfair or deceptive acts or practices in the conduct of trade or commerce. Alaska's Unfair Trade Practices and Consumer Protection Act ("the Act") provides in relevant part:

> (a)    Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful.
>
> (b)    The terms "unfair methods of competition" and "unfair or deceptive acts or practices" include, but are not limited to, the following acts:
> * * *
>
> (11)    engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services; . . . .

AS 45.50.471. The Alaska Supreme Court has held that the Act is not limited only to consumer transactions, but also applies to transactions between businesses. <u>Western Star Trucks, Inc. v. Big Iron Equip. Service, Inc.</u>, 101 P.3d 1047 (Alaska 2004). GMW is a business engaged in the conduct of trade or commerce. It is Kanag'iq's position that the Act therefore applies to GMW in this matter.

An act or practice is deceptive or unfair if it has the capacity or tendency to deceive. <u>State v. O'Neill Investigations, Inc.</u>, 609 P.2d 520, 534 (Alaska 1980). Intent to

Eide & Gingras, P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

deceive is not requisite and need not be proved. Id. at 535. It is Kanag'iq's position that it was misled or deceived with respect to the accuracy of GMW's invoices and the value of materials and services provided. William Jury, owner of Kanag'iq, will testify to this. Testimony of a business that it was misled is sufficient to sustain a prima facie case of unfair and deceptive practices. Id. at 535.

D.  Damages

   1.  Economic Damages

It is Kanag'iq's position that as a result of GMW's deceptive billing practices; Kanag'iq overpaid GMW in an amount in excess of Two Hundred Eighty-Seven Thousand Dollars ($287,000). Mr. Jury and Ms. Cheiko Jury will testify to that amount. Kanag'iq seeks initial economic damages in this amount to put it in the same position that it would have been in if GMW had kept its promise and performed pursuant to the subcontract.

   2.  Treble Damages

In accordance with Kanag'iq's position that GMW's overbillings are a violation of Alaska's Unfair Trade Practice and Consumer Protection Act, Kanag'iq is entitled to treble damages in an amount in excess of Eight Hundred Thousand Dollars ($800,000). The Act provides in relevant part:

> A person [business] who suffers an ascertainable loss of money or property as a result of another person's [business's] act or practice declared unlawful by AS 45.50.471 may bring a civil action to recover for each unlawful act or practice three times the actual damage or $500, whichever is greater. The court may provide other relief it considers necessary and proper. . . .

Eide & Gingras, P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

AS 45.50.531(a).  Kanag'iq therefore seeks damages in an amount in excess of Eight Hundred Thousand Dollars ($800,000) as a result of GMW's violation of the Act and as determined by the jury at trial.

## CONCLUSION

Defendants deny the allegations against them and stand ready to proceed to trial on January 22, 2008.

DATED at Anchorage, Alaska this 2nd day of January 2008.

AS 45.50.531(a). Kanag'iq therefore seeks damages in an amount in excess of Eight Hundred Thousand Dollars ($800,000) as a result of GMW's violation of the Act and as determined by the jury at trial.

## CONCLUSION

Defendants deny the allegations against them and stand ready to proceed to trial on January 22, 2008.

DATED at Anchorage, Alaska this 2nd day of January 2008.

>
> EIDE & GINGRAS, P.C.
> Attorneys for Defendants
> Kanag'iq Construction Co., Inc.
> And Western Surety Company
>
> By:     s/Thomas S. Gingras
>         Thomas S. Gingras
>         425 G Street, Suite 930
>         Anchorage, AK  99501
>         Phone:  (907) 279-0930
>         Fax:    (907) 279-0933
>         E-mail: tsgingras@egpalaska.com
>         Alaska Bar No. 7811098

**CERTIFICATE OF SERVICE**

I am a legal secretary employed by the law firm of Eide & Gingras, P.C. That on this 2nd day of January 2008, I served

    [x] Electronically

a true and accurate copy of the foregoing document upon the following counsel of record:

Sarah J. Tugman, Esq.
2509 Eide Street, Suite 4
Anchorage, AK  99503

EIDE & GINGRAS, P.C.

By   /s/Donna Charter

F:\431\05\Trial Documents\Trial Brief.DOC

Eide & Gingras, P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax