MINUTES OF THE UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

GMW FIRE PROTECTION, INC.,   vs.  KANAG'IQ CONSTRUCTION COMPANY,
EX REL                                    INC., ET AL

BEFORE THE HONORABLE  TIMOTHY M. BURGESS
CASE NO._____3:05-cv-00170-TMB

DEPUTY CLERK/RECORDER:       APRIL KARPER

APPEARANCES:    PLAINTIFF:   SARAH TUGMAN

                DEFENDANT:   THOMAS GINGRAS / LAURA GOULD

PROCEEDINGS: TRIAL BY JURY - DAY 5 HELD JANUARY 28, 2008:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
At 8:54 a.m. court convened without the jury panel present.

Court and counsel heard re exhibits; plaintiff's exhibits 167,
168, and 169 **WITHDRAWN**; defendant's exhibit E, I, and L
**WITHDRAWN.**

Court and counsel heard re exceptions to the jury instructions,
special verdict forms, and closing arguments.

At 9:12 a.m. court recessed until 9:24 a.m. without the jury
panel present.

Court and counsel heard re jury instructions.

At 9:27 a.m. the jury panel entered the courtroom.

Court read jury instruction.

Closing arguments heard.

Court read jury instructions.

At 11:06 a.m. the jury panel exited the courtroom to begin
deliberations.

Court and counsel heard re jury notes and exhibits.

CONTINUED ON PAGE 2

DATE:____January 28, 2008_____  DEPUTY CLERK'S INITIALS:___amk

Revised 6/18/07

EXHIBIT # _A_
Page # _1_ of _2_

Case 3:05-cv-00170-TMB    Document 118    Filed 01/28/2008    Page 2 of 2

```
                    CONTINUATION - PAGE 2
              GMW FIRE PROTECTION, INC., EX REL
                            vs.
          KANAG'IQ CONSTRUCTION COMPANY INC., ET AL
                     3:05-cv-00170-TMB
                   TRIAL BY JURY - DAY 5
                     January 28, 2008
```
-----------------------------------------------------------------

At 11:08 a.m. court recessed until 2:03 p.m. without the jury panel present.

Court and counsel heard re jury note.

At 2:05 p.m. court recessed until 2:23 p.m. without the jury panel present.

Court and counsel heard re jury note.

At 2:23 p.m. the jury panel entered the courtroom.

Verdict published. Jury found in favor of the plaintiff.

Jury polled; all answered in the affirmative.

At 2:29 p.m. court thanked and excused the jury panel.

Court and counsel heard re exhibits.

List of Exhibits and List of Witnesses to be filed separately.

Original Special Verdict form and Jury Instructions **FILED**.

At 2:30 p.m. court adjourned.

All admitted exhibits, blank jury notes, original verdict forms, and original jury instructions forwarded to the jury panel via the bailiff.

All original exhibits returned to counsel.

DATE:_____January 28, 2008_____ DEPUTY CLERK'S INITIALS:___amk___

Revised 6/18/07

EXHIBIT # A
Page # 2 of 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

|  |  |  |
|---|---|---|
| GMW FIRE PROTECTION, INC.,<br>Ex Rel<br>Plaintiff, | )<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:05-CV-00170-TMB |
| vs. | )<br>)<br>)<br>) |  |
| KANAG'IQ CONSTRUCTION CO.,<br>INC., et al,<br>Defendants. | )<br>)<br>)<br>)<br>) |  |

**NOTE FROM THE JURY**

YOUR HONOR,

On our verdict, may we enter a dollar amount and add in wording "plus interest and attorney fees", or do we need to compute a dollar figure ourselves?

DATED at _____Anchorage, Alaska on_____ $01/28$ , 2008
Month/Day

TIME: _1:27 p.m._  _____#6_____
JUROR # ONLY

(Rev 1/08)

EXHIBIT # _B_
Page # _1_ of _2_

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| GMW FIRE PROTECTION, INC., Ex Rel<br><br>        Plaintiff,<br><br>     vs.<br><br><br><br>KANAG'IQ CONSTRUCTION CO., INC., et al,<br>        Defendants. | )<br>)<br>)  CASE NO. __3:05-CV-00170-TMB__<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**NOTE FROM THE JURY**

YOUR HONOR,

_We have reached a verdict_

DATED at_____Anchorage, Alaska on_____ _01/28_ ____, 2008
                                          Month/Day

TIME: _2:09 p.m_____                    _#6_
                                          JUROR # ONLY

(Rev 1/08)

EXHIBIT # _B_
Page # _2_ of _2_

Sarah J. Tugman
Attorney at Law
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Telephone: (907) 677-7889
Fax: (907) 677-9188
e-mail: sjtugman@gci.net
Attorney for GMW Fire Protection, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

THE UNITED STATES for the use of   )
GMW Fire Protection, Inc.,         )
an Alaska Corporation,             )
                                   )
          Plaintiff,               )
v.                                 )
                                   )
KANAG'IQ CONSTRUCTION CO., INC.,   )
an Alaska Corporation and          )
WESTERN SURETY COMPANY, a          )
South Dakota Corporation,          )
                                   )
          Defendant.               )
_____)  Civil Action No. A05-170 CV

COMPLAINT
(40 U.S.C. §§ 270a-270f)

Plaintiff, the United States, brings this case pursuant to 40 U.S.C. § 270b for the use of GMW FIRE PROTECTION, INC. ("GMW"), and for its Complaint against Defendants, KANAG'IQ CONSTRUCTION CO., INC. ("KANAG'IQ"), and WESTERN SURETY COMPANY ("WESTERN"), states as follows:

NATURE OF THE CASE

1. This case arises out of Defendant KANAG'IQ'S failure to pay for services rendered and materials supplied under a contract between GMW and KANAG'IQ ("Contract").

COMPLAINT - page 1

EXHIBIT # C
Page # 1 of 1

2.   KANAG'IQ is the prime contractor to the UNITED STATES for the provision of services and materials in the construction of the fire alarm and sprinkler requirements at Elmendorf Air Force Base, Alaska.    Said prime contract is for an amount greater than $100,000.00.

3.   KANAG'IQ is the principal on a bond in the amount of $709,148.90 ("Bond"), the purpose of which is to guarantee payment to those persons supplying labor and furnishing materials in the prosecution of KANAG'IQ'S contract with the UNITED STATES.  WESTERN is the surety on the Bond.  A copy of the Bond is attached here as Exhibit A.

4.   The Miller Act, 40 U.S.C. §§ 270a-270f, is applicable to this action.

5.   By reason of GMW's furnishing of materials and services under its Contract with KANAG'IQ, GMW is a person protected under the Miller Act.

6.   The contract between KANAG'IQ and the UNITED STATES was for the construction, alteration or repair of a public building or public work of the UNITED STATES.

7.   GMW provided the materials and fully performed the services as required under the Contract with KANAG'IQ, yet there remains an outstanding balance owed by KANAG'IQ to GMW under the Contract of $533,848.77.

8.   GMW last performed labor or furnished materials under its

COMPLAINT – page 2

EXHIBIT # __C__
Page # __2__ of __1__

Contract with KANAG'IQ more than 90 days, but less than one year, prior to the filing of the Complaint.

<u>JURISDICTION, VENUE AND PLACE OF TRIAL</u>

9.  Jurisdiction in the United States District Courts is authorized by 40 U.S.C. § 270b(b).

10.  Venue is appropriate in the United States District Court for the District of Alaska, sitting in Anchorage, Alaska, pursuant to 40 U.S.C. § 270b(b), because the Contract was to be performed at Elmendorf Air Force Base, near Anchorage, Alaska.

<u>COUNT I</u>
<u>BREACH OF CONTRACT</u>

11.  GMW realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 10.

12.  The Contract required KANAG'IQ to pay GMW for services rendered and materials supplied.  KANAG'IQ has failed to pay $533,848.77 owed under the Contract.

<u>COUNT II</u>
<u>QUANTUM MERUIT</u>

13.  GMW realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 12.

14.  GMW conferred a benefit on KANAG'IQ in the form of services rendered and materials supplied.

15.  KANAG'IQ had an appreciation and knowledge of the benefit conferred by GMW.

16.  KANAG'IQ accepted and/or retained the benefits conferred

COMPLAINT - page 3

EXHIBIT # _C_
Page # _3_ of _7_

upon it by GMW's provision of services and materials.

17.  Under the circumstances, it is inequitable for KANAG'IQ to retain the benefits conferred upon it without payment to GMW for the fair value of such benefits.

<u>COUNT III</u>
<u>ACTION ON THE BOND</u>

18.  GMW realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 17.

19.  The amount owed by KANAG'IQ to GMW under the Contract and pursuant to GMW's quantum meruit claim is secured by the Bond, all as more fully set forth in Exhibit A.

20.  GMW is entitled to recover the amounts owed to it, from the Bond, pursuant to its Contract and/or its quantum meruit claims.

<u>PRAYER FOR RELIEF</u>

21.  Under Count I, GMW prays for an Order granting judgment against KANAG'IQ in the amount of $533,848.77 plus interest at the legal rate, for the costs of this action, for attorney fees, and for any additional relief this Court deems just and equitable.

22.  Under Count II, GMW prays for an Order granting judgment against KANAG'IQ equal to the value of benefits conferred upon KANAG'IQ by GMW due to GMW's provision of services and materials, plus interest at the legal rate, for the costs of this action, for attorney fees, and for any additional relief this Court deems just and equitable.

COMPLAINT - page 4

EXHIBIT # _C_
Page # _4_ of _7_

23.    Under Count III, GMW prays for an Order requiring WESTERN to release $533,848.77, plus interest at the legal rage, plus any additional applicable amounts, from WESTERN'S payment bond in order to satisfy the amounts due GMW under its contract with KANAG'IQ or under GMW's quantum meruit claim against  KANAG'IQ.

RESPECTFULLY SUBMITTED THIS _15th_ DAY OF JULY, 2005.

                              Sarah J. Tugman
                              Attorney at Law
                              Alaska Bar No. 8310101

                              _Sarah J. Tugman_
                              Sarah J. Tugman
                              Attorney for GMW Fire Protection, Inc.

COMPLAINT - page 5

EXHIBIT # C
Page # 5 of 7

| PAYMENT BOND (See instructions on reverse) Bond No. 929248045 | DATE BOND EXECUTED (Must be same or later than contract) September 30 2002 | | OMB No. : 9000-0045 | | |
|---|---|---|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, D.C. 20405

| PRINCIPAL (Legal name and business address) Kanag'Iq Construction Company, Inc. 3950 Mountain View Drive Anchorage, AK 99508 | TYPE OF ORGANIZATION ("X" one) ☐ INDIVIDUAL   ☐ PARTNERSHIP ☐ JOINT VENTURE   ☒ CORPORATION STATE OF INCORPORATION ALASKA | | | | |
|---|---|---|---|---|---|
| SURETY (IES) (Name(s) and business address(es)) Western Surety Company P.O. Box 5077 Sioux Falls, SD 57117-5077 | PENAL SUM OF BOND | | | | |
| | MILLION(S) | THOUSAND(S) 709 | HUNDRED(S) 148 | CENTS 90 | |
| | CONTRACT DATE 09/30/2002 | CONTRACT NO. F65501-00-D-0010 Option Year #2 | | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | PRINCIPAL Kanag'Iq Construction Company. Inc. | | | | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | CORPORATE SEAL | |
| NAME(S) & TITLE(S) (Typed) | 1. William Jury President | 2. | 3. | | |

| | INDIVIDUAL SURETY(IES) | | | | |
|---|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | | | |
| NAME(S) (Typed) | 1. | 2. | | | |

| | CORPORATE SURETY(IES) | | | | |
|---|---|---|---|---|---|
| S U R E T Y A | NAME & ADDRESS | Western Surety Company P.O. Box 5077, Sioux Falls, SD 57117-5077 | STATE OF INC. SOUTH DAKOTA | LIABILITY LIMIT $ 100% | CORPORATE SEAL |
| | SIGNATURE(S) | 1. Christin M Sweet | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Christin M. Sweet Attorney-in-Fact | 2. | | |

AUTHORIZED FOR LOCAL PRODUCTION
Previous edition is usable

S-1817/GEEF 10/01

Page 1 of 2

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)
FRP

EXHIBIT # C
Page # 6 of 7

EXHIBIT A
PAGE 1 OF 2

| | | CORPORATE SURETY(IES) (Continued) | | | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | CORPORATE SEAL |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed CORPORATE SURETY(IES)." In the space designated

"SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

EXHIBIT # _C_

Page # _1_ of _1_

EXHIBIT _A_

PAGE _2_ OF _2_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

THE UNITED STATES for the use of ) 
 GMW Fire Protection, Inc., an Alaska )
Corporation, )
 )
 )
                          Plaintiff, )
 )
            vs. )
 )
KANAG'IQ CONSTRUCTION CO., )
INC., an Alaska Corporation, and )
WESTERN SURETY COMPANY, a )
South Dakota Corporation, )
 )
                          Defendants. )    3:05-cv-170 TMB
 )
 )

---

### SPECIAL VERDICT FORM

We, the jury in the above-captioned case, find the following special verdict submitted to us in the above-captioned case:

### DAMAGES

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

It is for you to determine what damages, if any, have been proved.

Your award, if any, must be based upon evidence and not upon speculation, guesswork or conjecture.

EXHIBIT # D
Page # 1 of 2

1.     If you find that neither GMW nor Kanag'iq was damaged, check the following box:

☐     No damages awarded

The foreperson should sign the verdict form and you need answer no further questions.

Otherwise, proceed to questions 2 and 3.

2.     If you find for GMW, you must determine GMW's damages. GMW has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate GMW for any injury you find was caused by Kanag'iq. You should determine the following:

The amount due to GMW:

Answer     $ _533,848.77_____

3.     If you find for Kanag'iq, you must determine Kanag'iq's damages. Kanag'iq has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate Kanag'iq for any injury you find was caused by GMW. You should determine the following:

The amount due to Kanag'iq:

Answer     $_____Ø_____

DATED at Anchorage, Alaska this _28_ day of January, 2008.

REDACTED SIGNATURE
_____
Foreperson of the Jury

EXHIBIT # __D__
Page # _2_ of _2_



DEFENDANT'S
EXHIBIT

CASE
NO. *A05-170CV*

EXHIBIT
NO. *A-H*



# Kanag'iq Construction Company, Inc.
## SUBCONTRACT
### SUBCONTRACT NUMBER  1030-1500-1600

THIS AGREEMENT was made and entered into by and between:

| | |
|---|---|
| Company Name: | Kanag'iq Construction Company, Inc. |
| Address: | 3950 Mountain View Drive |
| City, State, Zip: | Anchorage, Alaska 99508-1511 |
| Telephone: | 907-258-5879 Main Office |
| Fax: | 907-258-5896 Main Office |

hereinafter called the CONTRACTOR, and

| | |
|---|---|
| Company Name: | GMW Fire Protection |
| Address: | 7910 King Street |
| City, State, Zip: | Anchorage, Alaska 99518 |
| Telephone: | 907-336-5000 |
| Fax: | 907-336-5050 |

hereinafter called the SUBCONTRACTOR;

**WITNESSETH:**

The CONTRACTOR, for the full, complete, and faithful performance of this SUBCONTRACT, agrees to pay the SUBCONTRACTOR:

(a)     Lump Sum of

(b)     Unit Prices as set forth below which on the basis of estimated quantities will involve a gross contract price of approximately **PER ATTACHED FAX QUOTATION AND 00/100 DOLLARS Subcontractor will be paid by line items.**
        ($              )

In consideration thereof, the SUBCONTRACTOR agrees as follows:

1.      To furnish and perform all work as described in Paragraph 3 hereof, for **Fire Requirements** located in **Elmendorf AFB, Alaska,** for 3rd.Contracting Squadron hereinafter called OWNER, in accordance with the Contract dated the **29th day of September 2000,** between the OWNER and the CONTRACTOR, and the general special and supplementary conditions of said Contract, and in accordance with the drawings and specifications and addenda for said construction by (ARCHITECTS) and (ENGINEERS) all of which documents in their ENTIRETY are hereinafter referred to as the MAIN CONTRACT and have been made and remain available to the SUBCONTRACTOR.

2.      To be bound by all laws, government regulations, and orders, and all provisions of the MAIN CONTRACT which provisions are incorporated by reference and to be bound by the provisions attached hereto.

3.      To provide all design, supervision, installation, materials, labor, suppliers, equipment and tools: **For work based on delivery order by 3rd Contracting Squadron. Delivery orders will be of random quantities . Contract will be for base year from September 29,2000 to September 29, 2001.**

        SUBCONTRACTOR'S work shall include all items of work listed above plus any items normally performed by SUBCONTRACTOR in association with its work, including such items as may be specified in the plans, drawings and technical specifications of the MAIN CONTRACT.

4.      Under the provision of Paragraph (U) on the reverse arbitration (is) (is not) provided for in this SUBCONTRACT.

EXHIBIT # *E*
Page # *1* of *5*

In WITNESS WHEREOF the CONTRACTOR and SUBCONTRACTOR have executed this agreement, effective the date of the last authorized signature unless otherwise agreed.

| | |
|---|---|
| 11/2/00 | 10-26-00 |
| Date | Date |
| By _William Guy_ | By _Glen Johnson_ |
| Authorized Signature CONTRACTOR | Authorized Signature SUBCONTRACTOR |
| AA 6332 | 26256 |
| CONTRACTOR'S Registration Number | SUBCONTRACTOR'S Registration Number |
| | _Laura L. Beil_ |
| Witness | Witness |

**SEE ATTACHED INCORPORATED PROVISIONS**

EXHIBIT # _E_
Page # _2_ of _5_

## A. OBLIGATIONS & RESPONSIBILITIES

It is agreed that the SUBCONTRACTOR will assume toward the CONTRACTOR all obligations and responsibilities which the CONTRACTOR has assumed toward the OWNER under the MAIN CONTRACT, to the extent of the work herein subcontracted, and shall be entitled to all privileges and protection granted the CONTRACTOR by the OWNER, under the MAIN CONTRACT. The SUBCONTRACTOR agrees not to assign or subcontract a substantial portion of the performance of this SUBCONTRACT without the prior written consent of the CONTRACTOR. SUB- CONTRACTOR shall designate in writing all lower tier subcontractors to CONTRACTOR and shall not subsequently change such lower tier subcontractors without CONTRACTOR'S approval. CON-TRACTOR hall furnish to the SUBCONTRACTOR, upon SUBCONTRACTOR request, the legal description of the premises covered by the MAIN CONTRACT.

## B. DRAWINGS

SUBCONTRACTOR agrees to furnish drawings, specifications, and final selection of materials and other specified items, in the quantity required in the contract documents, for approval by OWNER or OWNER'S agent so as not to delay progress of the work.

## C. SCHEDULING

CONTRACTOR shall give to SUBCONTRACTOR advanced notice of anticipated starting date for SUBCONTRACT work. CONTRACTOR shall consult with SUBCONTRACTOR on development and update of a construction schedule at SUBCONTRACTOR'S request and shall make such schedule available to SUBCONTRACTOR at SUBCONTRACTOR'S request. SUBCONTRACTOR shall start work on the date named by the CONTRACTOR, and shall complete the several portions and the whole of the work herein sublet, at such times as will enable the CONTRACTOR to fully comply with the MAIN CONTRACT. SUBCONTRACTOR shall cooperate with the CONTRACTOR and other subcontractors. The SUBCONTRACTOR will be bound by any provisions in the MAIN CONTRACT for liquidated damages, and shall pay damages for any delay to the extent caused by the SUBCONTRACTOR.

## D. PAYMENTS

SUBCONTRACTOR shall submit to the CONTRACTOR applications for payment at such reasonable times as to enable the CONTRACTOR to timely apply for and obtain payment from the OWNER. Unless otherwise mutually agreed CONTRACTOR shall withhold retainage from the SUBCONTRACTOR as provided in the MAIN CONTRACT. SUBCONTRACTOR'S applications for payment shall be accompanied by labor, material and/or equipment releases, properly executed by SUBCONTRACTOR and all labor, sub-subcontractors, suppliers, and others who may have lien or claim rights against the project or any bond. Such releases will be in a form satisfactory to CONTRACTOR. The CONTRACTOR'S obligation to release retention to the SUBCONTRACTOR shall be subject to proof that there are no unpaid claims which would provide the basis of a lien against the premises, retention of payment bond, or subject to (1) withholding of sufficient funds, or (2) furnishing an adequate and sufficient payment and performance bond. SUBCONTRACTOR shall be paid for work to date of CONTRACTOR'S last progress billing date. as approved by the ARCHITECT or ENGINEER within ten days after CONTRACTOR has received his payment for such progress billing. Final payment for work under this SUBCONTRACT shall be made within ten days after the CONTRACTOR has received his final or complete payment. If the contract between OWNER and CONTRACTOR permits payment for materials delivered to the job site, or to satisfactory storage facilities, SUB-CONTRACTOR may invoice for materials so delivered and receive payment therefor as outlined above; PROVIDED HOWEVER, that such stored materials shall be at the risk of the SUBCONTRACTOR until acceptance of the SUBCONTRACT work. SUBCONTRACTOR shall notify the CONTRACTOR of the assignment of proceeds of this SUBCONTRACT prior to such assignment and shall require the acceptance by assignee of the terms of this SUBCONTRACT including the obligation for adjustments and return to CONTRACTOR of overpayments. The SUB-CONTRACTOR acknowledges that all payments accepted by him or which are otherwise due under this SUBCONTRACT shall constitute a trust fund in favor of the laborers, materialmen, governmental authorities and all others who are legally entitled to claim a lien on the premises covered by this SUBCONTRACT or otherwise file a claim against any retained percentages or payment bond. SUBCONTRACTOR agrees that no assignment of any payment otherwise due under this SUBCONTRACT shall be made without first securing the express approval of any assignee to the limitations contained in this subparagraph. Progress payments shall be deemed advances and are subject to adjustment at any time prior to final payment for errors, overpayment, or CONTRACTOR'S good faith determination that the remaining balance of payments may be insufficient to ensure completion of work covered by this SUBCONTRACT in accordance with its terms or to pay lien, retention, or bond claims. If the CONTRACTOR determines in good faith that the SUBCONTRACTOR is obligated to the CONTRACTOR or anyone else for labor, fringes, taxes, supplies, materials, equipment, rental or other proper charges against the work covered by this SUBCONTRACT, the amount of such obligation may be deducted by the CONTRACTOR from any payment or payments made under this provision. PROVIDED FURTHER that the CONTRACTOR may from time to time require and SUBCONTRACTOR shall promptly provide a Statement in writing setting forth what amounts, if any, are due or payable by SUBCONTRACTOR to third parties for labor, fringes, taxes, materials, equipment or supplies in connection with, or arising out of, the performance of the SUBCONTRACT, and the CONTRACTOR may withhold from any payment, partial or final, otherwise due under this SUBCONTRACT, such sums as the CONTRACTOR reasonably may determine are necessary to secure and protect the CONTRACTOR or the OWNER from claims or liens that may be asserted by said third parties.

## E. CHANGE ORDERS

The CONTRACTOR may, without invalidating this SUBCONTRACT, order in writing, extra work or make changes by altering, adding to, or deducting from the work; and the SUBCONTRACT price shall be adjusted as agreed. All such work shall be executed under the conditions hereof and of the MAIN CONTRACT, except that any claims for extension of time caused thereby must be agreed upon at the time of ordering such change. The SUBCONTRACTOR shall make no claims for extras unless the same shall be agreed upon in writing by the CONTRACTOR prior to the performance of any such extra work. In case of any disputes over the adjustment of the cost, SUBCONTRACTOR shall proceed with the work and the dispute shall be resolved in accordance with the procedures set forth in the MAIN CONTRACT. SUBCONTRACTOR recognizes that due to the unique nature of the financing of this Project, any failure to comply with the written notice requirements for change orders will prejudice OWNER and CONTRACTOR and all claims

EXHIBIT # E

Page # 3 of 6

which fail to strictly follow those requirements are waived

### F. NATURE OF WORK

SUBCONTRACTOR has satisfied himself as to the nature and location of the work, the character, quantity and kind of material to be encountered, the character, kind and quality of the equipment needed during the prosecution of the work, the location, conditions and other matters which can in any manner affect the work under this SUBCONTRACT, and acknowledges that SUBCONTRACTOR has had a reasonable opportunity to examine the site, all of the MAIN CONTRACT documents and SUBCONTRACTOR'S proposal sufficient to so satisfy himself.

### G. SUBCONTRACTOR EMPLOYER

SUBCONTRACTOR has the status of an employer as defined by the Industrial Insurance, Workers' Compensation and Unemployment Compensation Act, Social Security, and other similar acts of the federal, state and local Government. SUBCONTRACTOR will withhold from its payroll the applicable Social Security taxes, Workers' Compensation, Unemployment Compensation contributions and withholding taxes, and pay the same, and the CONTRACTOR shall in no way be liable as an employer to or on account of any of the employees of the SUBCONTRACTOR. Before final payment is made upon this SUBCONTRACT, SUBCONTRACTOR shall furnish satisfactory evidence to the CONTRACTOR that he has conformed to said laws, rules and regulations. The SUBCONTRACTOR hereby agrees to indemnify the CONTRACTOR for any and all liability under such laws arising from the work performed under this SUBCONTRACT.

### H. PERMITS/TAXES

The SUBCONTRACTOR shall secure and pay for all permits, fees and licenses necessary for the performance of the SUBCONTRACT and shall pay any and all federal, state and municipal taxes. including sales taxes, if any, for which the SUBCONTRACTOR may be liable in carrying out the SUBCONTRACT.

### I. MATERIALS

Materials delivered by or for the SUB-CONTRACTOR and intended to be incorporated into the construction hereunder shall remain on the job site and shall become property of the OWNER upon payment; but the SUBCONTRACTOR may repossess himself of any surplus remaining at the completion of the contract. All scaffolding, apparatus, ways, works, machinery and plant brought upon the premises by the SUBCONTRACTOR, shall remain his property; but in case of inability to perform, and the completion of the work is done by the CONTRACTOR, the CONTRACTOR shall be entitled to use the said scaffolding, apparatus, ways, works, machinery and plant without cost or liability for depreciation or damage by use and without prejudice to CONTRACTOR'S other rights or remedies for any damage or loss sustained by reason of said inability. It shall be the SUBCONTRACTOR'S responsibility to unload, store and protect his materials and the SUBCONTRACTOR shall bear the risk of loss thereof, and shall protect such material against loss until actually incorporated into the work and the work accepted, even though title thereto may previously have passed to the OWNER under the preceding provisions, except the SUBCONTRACTOR shall not bear any such loss as may be due to the sole negligence of the CONTRACTOR.

### J. TAKEOVER

SUBCONTRACTOR shall commence and at all times carry on, perform, and complete this SUBCONTRACT

to the full and complete satisfaction of the CONTRACTOR and of the ARCHITECT, ENGINEER or OWNER. It is specifically understood and agreed that in the event that the CONTRACTOR shall at anytime be of the good faith opinion, after consultation with the SUBCONTRACTOR, that the SUBCONTRACTOR is not proceeding with diligence and in such a manner as to satisfactorily complete the work within the required time, or if the SUBCONTRACTOR shall fail to correct, replace or re-execute faulty or defective work done or materials furnished under this SUBCONTRACT as required by the CON-TRACTOR, then and in that event the CONTRACTOR shall have the right after a seven-calendar-day notice confirmed in writing to take over the work, or any portion thereof, and to complete the same at the cost and expense of the SUB-CONTRACTOR, without prejudice to the CON-TRACTOR'S other rights or remedies for any loss or damage sustained. In the event of an emergency involving risk of loss or injury to person or property, arising prior to an actual takeover, CONTRACTOR may take appropriate action to mitigate such emergency and may charge SUBCONTRACTOR for all costs incurred in such mitigation. Previous demands made on SUBCONTRACTOR not followed by a takeover shall not be deemed a waiver of CONTRACTOR'S right to do so.

### K. INDEMNIFICATION

The SUBCONTRACTOR agrees to indemnify and save harmless the CONTRACTOR, its officers, agents and employees, from and against any and all suits, claims, actions, losses, costs, penalties, and damages of whatsoever kind or nature, including attorney fees, arising out of, in connection with, or incident to, the work of this SUBCONTRACT, except that caused by the sole negligence of the CONTRACTOR. In the event of litigation between the parties to enforce the rights under this paragraph, reasonable attorney fees shall be allowed to the prevailing party. This indemnification obligation shall include, but is not limited to, all claims against the CONTRACTOR by an employee or former employee of the SUBCONTRACTOR, and the SUBCONTRACTOR expressly waives all immunity and limitation on liability under any Industrial Insurance Act, other workers' compensation act, disability benefit act or other employee benefit act of any jurisdiction which would otherwise be applicable in the case of such a claim.

### L. UNIT PRICE

In the event the SUBCONTRACT contains unit price items it is understood and agreed that any quantities mentioned are approximate only and subject to change as requested by the MAIN CONTRACT and as ordered and directed by the CONTRACTOR.

### M. MATERIAL QUALITY

Materials condemned by the CONTRACTOR, ARCHITECT, ENGINEER, or OWNER as failing to conform to the MAIN CONTRACT, worked or not, shall upon notice from the CONTRACTOR, be immediately removed by the SUBCONTRACTOR. Failure of the CONTRACTOR to immediately condemn any work or materials as installed shall not in any way waive the CONTRACTOR'S right to object thereto at any subsequent time.

### N. JOB DAMAGE

Job damage caused by SUBCONTRACTOR on work other than his own shall be reported immediately to CONTRACTOR, and SUBCONTRACTOR shall be responsible for its repair. Job damage caused by CONTRACTOR on work of a SUBCONTRACTOR shall be reported immediately to the SUBCONTRACTOR and CONTRACTOR shall be responsible for its repair.

-4-

## O. HOUSEKEEPING

SUBCONTRACTOR shall regularly and promptly remove all refuse, waste and debris produced by his operation. Refuse shall not be permitted to accumulate to the extent that it interferes with free access to the work site. Compliance with all safety requirements of "Good Housekeeping" is an essential part of SUBCONTRACTOR'S obligation. In the event of SUBCONTRACTOR'S failure after notification or refusal to meet these requirements, refuse removal may be done by CONTRACTOR and charged against the account of the SUBCONTRACTOR.

## P. BOND

Unless otherwise provided in the contract documents, SUBCONTRACTOR shall at CONTRACTOR'S request and expense furnish a performance and payment surety bond acceptable to the CONTRACTOR in an amount equal to this contract price, conditioned on and covering the faithful performance of, and compliance with, all the terms, provisions, and conditions of this contract, and payment for all labor, materials, equipment and supplies used in the prosecution of the work provided herein. SUBCONTRACTOR shall furnish such bond within ten days of receipt of this SUBCONTRACT.

## Q. WORKERS' COMPENSATION

SUBCONTRACTOR shall furnish to CON-TRACTOR evidence that he has in force Workers' Compensation Insurance including Employer's Liability, as may be required by the jurisdiction or jurisdictions in which the work is being performed. Where applicable, this shall include United States Longshoremen's and Harbor Workers Act Insurance including Coverage B-Employers Liability (Maritime) with limits not less than the Bodily Injury limits required by the MAIN CONTRACT but in no event less than $500,000. Such evidence of insurance may be in the form of an Insurance Certificate issued by an Insurer satisfactory to the CONTRACTOR and shall provide for not less than 10 days' notice to CONTRACTOR of cancellation or reduction of coverage. In the event SUBCONTRACTOR fails to maintain any insurance required by this SUBCONTRACT in force during the entire life of the SUBCONTRACT, CONTRACTOR may at his option purchase such insurance in the name of SUBCONTRACTOR and deduct the cost of same from payment due SUBCONTRACTOR.

## R. INSURANCE

SUBCONTRACTOR shall obtain and keep in force during the term of the contract public liability and property damage insurance with coverage equal to, or greater than, the minimum specified in the MAIN CONTRACT. The SUBCONTRACTOR shall furnish to the CONTRACTOR evidence of this insurance as in the same form as described in Paragraph (Q). Such insurance shall indicate that it includes contractual liability coverage applicable to the indemnity provisions of this SUBCONTRACT. The SUBCONTRACTOR shall give CONTRACTOR ten days' notice of any cancellation.

## S. SUB-TIER CONTRACTORS

Any SUB-TIER CONTRACTOR shall be bound to the SUBCONTRACTOR the same as the SUBCONTRACTOR is bound to the CONTRACTOR and the same as the CONTRACTOR is bound to the OWNER. This form may be used for SUB-TIER CONTRACTS and when so used, the term CONTRACTOR shall mean SUBCONTRACTOR and term SUBCONTRACTOR shall mean SUB -TIER CONTRACTOR.

## T. MODIFICATIONS

No modifications of this agreement and no waiver of any rights under this SUBCONTRACT shall be valid or binding on the parties unless the same be in writing. Failure of the CONTRACTOR to insist upon strict performance of the SUBCONTRACT, or to exercise any option herein conferred in any one or more instances, shall not be construed to be a waiver of any such, or any other covenants or agreements, but the same shall be and remain in full force and effect

## U. TERMINATION FOR CONVENIENCE

The CONTRACTOR may, at its sole and absolute discretion, terminate this SUBCONTRACT for its convenience. If the CONTRACTOR so elects, the CONTRACTOR shall be liable to the SUBCONTRACTOR solely for the reasonable value of work performed by the SUBCONTRACTOR prior to the SUBCONTRACT termination, including reasonable overhead and profit, less prior payments made. SUBCONTRACTOR shall not be entitled to prospective profits on unperformed work.

## V. SAFETY

SUBCONTRACTOR shall take all reasonable safety precautions pertaining to its work and the conduct thereof, including, but not limited to, compliance with all applicable laws, ordinances, rules, regulations and orders issued by a public authority, whether federal, state, local or otherwise, the Federal Occupational Safety and Health Act, and, in addition, any safety measures called for by CONTRACTOR. SUBCONTRACTOR shall attend all safety meetings (weekly or otherwise) called by CONTRACTOR. SUBCONTRACTOR shall obtain permission from CONTRACTOR before removing or interfering with, any safety devices or controls installed by CONTRACTOR or others, and SUBCONTRACTOR will replace or restore such devices or controls at its expense.

EXHIBIT # E
Page # 5 of 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES for the use of GMW Fire Protection, Inc., an Alaska Corporation , <br><br> Plaintiff, <br><br> vs. <br><br> KANAG'IQ CONSTRUCTION CO., INC., an Alaska Corporation and WESTERN SURETY COMPANY, a South Dakota Corporation, <br><br> Defendants. | Case No. 3:05-cv-170 TMB <br><br><br> <u>ORDER DENYING PARTIAL SUMMARY JUDGMENT</u> |

## I. Motion Presented

The United States for the use of GMW Fire Protection, Inc. ("GMW") alleges that GMW

provided materials and performed services under a subcontract with Defendant Kanag'iq

Construction Co., Inc. ("Kanaq'iq"), but there remains an outstanding balance owed under the

contract. GMW seeks recovery of the outstanding balance. Kanaq'iq counterclaims, alleging

overcharges by GMW. At Docket No. 23, Kanag'iq and co-defendant Western Surety Company

move for a rule of law and partial summary judgment with respect to particular provisions of the

subcontract between Kanag'iq and GMW. Because the Court believes that there are genuine issues

of material fact on the question of modification and on how the subcontract should be interpreted,

Kanag'iq's motion for partial summary judgment is hereby DENIED.

1



EXHIBIT # F
Page # 1 of 6

## II. Background

On September 29, 2000, the United States entered into a contract (the "Main Contract")

with Kanaq'iq to construct fire protection systems on Elmendorf Air Force Base in Alaska. The

Main Contract contains an option to extend. This option was exercised twice, and the Main

Contract was extended through September 28, 2003.

Kanaq'iq and GMW entered into a subcontract (the "Subcontract") with the duration

specified as "for base year from September 29, 2000 to September 29, 2001." Under the

Subcontract, GMW was to provide services in connection with the Main Contract. GMW agreed:

> To be bound by all laws, government regulations, and orders, and all provisions of the
> MAIN CONTRACT which provisions are incorporated by reference and to be bound by the
> provisions attached hereto.

With respect to payment, the Subcontract reads that:

> The CONTRACTOR, for the full, complete, and faithful performance of this
> SUBCONTRACT, agrees to pay the SUBCONTRACTOR:

> (a)  Lump Sum of
> (b)  Unit Prices as set forth below which on the basis of estimated quantities will involve
> a gross contract price of approximately **PER ATTACHED FAX QUOTATION
> AND 00/100 DOLLARS Subcontractor will be paid by line items.**
> ($           )

Under the heading MODIFICATIONS, the Subcontract states that:

> No modifications of this agreement and no waiver of any rights under this
> SUBCONTRACT shall be valid or binding on the parties unless the same be in writing.
> Failure of the CONTRACTOR to insist upon strict performance of the SUBCONTRACT, or
> to exercise any option herein conferred in any one or more instances, shall not be construed
> to be a waiver of any such, or any other covenants or agreements, but the same shall be and
> remain in full force and effect.

## III. Standard of Review

2

EXHIBIT # F

Page # 2 of 6

A party may move for summary judgment as to "all or any part" of a claim.[1]  The standard

and procedures for partial summary judgment are the same as for summary judgment.[2]  Summary

judgment is appropriate if, when viewing the evidence in the light most favorable to the nonmoving

party, there are no genuine issues of material fact and the moving party is entitled to a judgment as

a matter of law.[3]

## IV. Discussion

Kanaq'iq asks this Court to interpret the Subcontract in several respects.  First, Kanaq'iq

contends that the Subcontract is an integrated contract, subject only to written modification by the

parties.  As such, Kanaq'iq argues that this Court should conclude that the contract is a unit price

contract and exclude any evidence that the parties intended to vary the price terms.  For textual

support, it points to the language of the Subcontract calling for unit pricing and to the modification

clause reading:

> No modifications of this agreement and no waiver of any rights under this
> SUBCONTRACT shall be valid or binding on the parties unless the same be in writing.
> Failure of the CONTRACTOR to insist upon strict performance of the SUBCONTRACT, or
> to exercise any option herein conferred in any one or more instances, shall not be construed
> to be a waiver of any such, or any other covenants or agreements, but the same shall be and
> remain in full force and effect.

GMW does not dispute that the Subcontract is a unit price contract by its terms.  Instead, it

argues that the parties never enforced the unit price terms of the contract.  GMW claims that the

---

[1]    FED. R. CIV. P. 56(a)-(b).

[2]    *Caine v. Duke Communications Intern.*, No. CV-95-0792 JMI (MCX), 1995 WL
608523, at *1 (C.D.Cal. Oct. 3, 1995).

[3]    FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

3


EXHIBIT #  E
Page #  3  of  6

parties modified the contract by conduct and Kanaq'iq waived its right to enforce the unit price

terms of the contract. GMW supports its arguments with documentary evidence and deposition

testimony suggesting that the parties did not operate as if a unit price contract was in place, but

instead used estimates and lump sum pricing throughout their course of dealing. For example,

GMW president Glen Johnson testified that the Subcontract was not handled as a unit price contract

from its inception but was a "bottom line project every time." Kanaq'iq employee Phil Young

testified that the parties basically used bottom line totals instead of line items. And Kanaq'iq

employee William Jury acknowledged that the delivery orders did not contain line items for some

work that was actually performed by GMW, suggesting that the parties did not strictly adhere to

unit pricing.

Kanaq'iq counters that, since the Subcontract is an integrated contract unambiguous in its

terms about unit pricing, the parol evidence rule applies to exclude any evidence presented by

GMW about modification. But Kanaq'iq's argument rests on a misapprehension of the parol

evidence rule. Under the parol evidence rule, "an integrated written contract cannot be varied or

contradicted by <u>prior</u> negotiations or agreements."[4] The rule "exists to fix the terms of the contract

at the time of its execution" and therefore "does not preclude the admission of evidence, oral or

written, of the subsequent modification or termination of the integrated agreement."[5]

This case arises under the Miller Act, and the Ninth Circuit has held that in Miller Act

cases, "state [substantive] law controls, at least as to subcontracts to which the United States is not

---

[4]     *Still v. Cunningham,* 94 P.3d 1104, 1109 (Alaska 2004)(emphasis added).

[5]     11 Richard A. Lord, Williston on Contracts § 33:14 at 615 (4th ed.1999).

4

EXHIBIT # E
Page # 4 of 6

a party."[6]  Alaska law therefore governs.  Under Alaska law, "modification of a written contract

may be effected either through subsequent conduct or oral agreements."[7]  And "[w]hether a

modification has occurred is a question of fact."[8]  Since GMW has presented sufficient evidence to

raise a genuine issue of material fact on the question whether the contract was modified by the

conduct of the parties, summary judgment is inappropriate.

 The fact that the Subcontract requires that modifications or waivers of rights be in writing

does not change this conclusion.  As explained in *American Jurisprudence*:

> Parties to a contract are not forever locked into its terms.  Accordingly, parties to an existing
> contract may, by mutual assent, modify it, provided the modification does not violate the
> law or public policy, and provided that there is consideration for the new agreement or that
> it satisfies a statute or is made under circumstances making consideration unnecessary.
> Accordingly, it is entirely competent for the parties to a contract to modify or waive their
> rights under it and engraft new terms upon it.  Furthermore, the parties to a contract are
> ordinarily as free to change it after making it as they were to make it in the first instance,
> notwithstanding provisions in it designed to hamper such freedom, or regardless of
> contractual provisions to the contrary.[9]

 Kanaq'iq also contends that, since the Subcontract incorporated the provisions of the Main

Contract by reference, the Subcontract was automatically extended with the Main Contract in

option years one and two.  The Court also declines to enter partial summary judgment on this

theory.  While under the Subcontract, GMW agreed to be bound by all provisions of the Main

---

[6] *U. S. ex. rel. Bldg. Rentals Corp. v. Western Cas. & Sur. Co.*, 498 F.2d 335, 338
n.4 (9th Cir. 1974)

[7] *Alaska Statebank v. Fairco*  674 P.2d 288, 292 (Alaska 1983).

[8] *Id.*

[9] 17A AM. JUR. 2D *Contracts* § 507 (2007).

EXHIBIT # *F*
Page # *5* of *6*

Contract, the Subcontract expressly states that it is "for base year from September 29, 2000 to September 29, 2001." There are no references to any extensions of the Subcontract. While it is possible that by incorporating the Main Contract by reference the parties intended for the Subcontract to automatically extend if the Main Contract was extended, the Subcontract could also be interpreted as being limited in duration. Contract interpretation, while usually a question of law, becomes a question for the trier of fact when the contract itself is susceptible to two meanings.[10] Because it is ambiguous whether the Subcontract incorporates by reference the option extension provisions of the Main Contract, the Court also DENIES Kanaq'iq's request for this Court to conclude that the Subcontract was automatically extended during option years one and two.

### V. Conclusion

For the foregoing reasons, the motion for a rule of law and partial summary judgment at Docket No. 23 is hereby DENIED.

Dated at Anchorage, Alaska, this 1st day of May, 2007.

/s/ Timothy Burgess
Timothy M. Burgess
United States District Judge

---

[10]     *Kay v. Danbar, Inc.*, 132 P.3d 262, 269 (Alaska 2006).

6


EXHIBIT # F
Page # 6 of 6