Sarah J. Tugman
Attorney at Law
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Telephone: (907) 677-7889
Fax: (907) 677-9188
e-mail: sjtugman@gci.net
Attorney for GMW Fire Protection, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| THE UNITED STATES for the use of GMW Fire Protection, Inc., an Alaska Corporation,<br><br>          Plaintiff,<br><br>v.<br><br>KANAG'IQ CONSTRUCTION CO., INC., an Alaska Corporation and WESTERN SURETY COMPANY, a South Dakota Corporation,<br><br>          Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. A-05-0170 CV (TMB) |

## GMW'S OPPOSITION TO DEFENDANTS' MOTION FOR JNOV OR A NEW TRIAL

GMW does not fully understand Defendants' argument as to what the jury concluded. As GMW sees it, the jury could have decided that Kanag'Iq was right and that there was a unit price contract, or that GMW was right and that there was a modified contract under which GMW provided quotes and was to be paid the amount of those quotes as invoiced by GMW. Or, the jury could have found that there was no contract and that quantum meruit applied, in which case GMW's recovery would have been the reasonable value of the labor and materials it provided.

The jury obviously concluded, based on its award, that the contract was amended so that payment was to be made in the amount of GMW's invoices. This was the claim made in GMW's opening and closing arguments. The sum the jury awarded was the exact unpaid amounts under those invoices.

GMW never claimed that there was no contract after the first year. There was. It was the modified contract. Defendants' claim that the jury awarded quantum meruit damages does not square with the evidence or arguments made at trial.

In any event, regardless of the jury's theory of liability, Defendants' motion for JNOV or a new trial should fail.

**NEITHER MODIFICATIONS TO THE SUBCONTRACT, NOR WAIVER, NOR RATIFICATION, DISCHARGED WESTERN SURETY FROM LIABILITY UNDER THE BOND.**

Defendants' argument that modifications to the subcontract, or Kanag'Iq's waiver or ratification, exonerate Western Surety from liability under the bond is contrary to the applicable law with respect to the obligations of sureties under Miller Act bonds.

Where the Miller Act applies, such as here, a prime contractor must secure a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract [a federal public works contract exceeding $100,000]." 40 U.S.C. § 3131(b)(2).

Bonds under the Miller Act are not in the ordinary form, but are executed on printed blanks prescribed by the General Services

Administration. <u>American Auto Ins. Co. v. U.S.</u>, 269 F.2d 406, 408 (1st Cir. 1959).

Someone who "has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full ... may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought...." 40 U.S.C. § 3133(b).

The Payment Bond issued by Western Surety,[1] by its express terms, bonds "contract number F65501-00-D-0010 [the contract for the second option year between the U.S. and Kanag'Iq]".[2] It insures that the Principal (Kanag'Iq) "promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above [the contract between the government and Kanag'Iq], and any authorized modifications to the contract that subsequently are made. Notice of these modifications to the Surety(ies) are waived."

Miller Act sureties cannot be easily discharged from liabilities to subcontractors that have not been paid by prime contractors. The court, in <u>American Auto Ins. Co. v. U.S.</u>, 269

---

[1] Exhibit 1.

[2] Exhibit 2.

F.2d 406, 409 (1st Cir. 1959), relying upon <u>Guaranty Co. v. Pressed Brick Co.</u>, 191 U.S. 416, 24 S.Ct. 14, 48 L.Ed. 242 (U.S. 1903), explained:

> the rule automatically absolving a surety from liability because of an alteration in the contract between the principal and the obligee without the surety's consent is not applicable to bonds such as those under the Miller Act, where the surety has deliberately contracted for an uncertain obligation.

A surety's liability under a Miller Act payment bond "depend[s] entirely on whether the claim [falls] within the 'language of [the Miller Act], interpreted in light of its protective purpose.'" <u>United States v. Westar Engineering, Inc.</u>, 290 F.3d 1199, 1206 (9th Cir. 2002) quoting <u>Mai Steel Service, Inc. v. Blake Construction Co.</u>, 981 F.2d 414, 417-18 (9th Cir. 1992), quoting <u>U.S. ex rel. T.M.S. Mech. Contractors v. Millers Mutual Fire Ins. Co. of Texas</u>, 942 F.2d 946, 951 (5th Cir. 1991).[3]

Defendant's reliance upon <u>United States v. Reliance Ins. Co.</u>,

---

[3] <u>United States v. Westar Engineering, Inc.</u>, 290 F.3d 1199, 1207 (9th Cir. 2002)(pay-when-paid clause in the subcontract did not permit surety to avoid Miller Act liability – "Where subcontract terms effect the timing of recovery or the right of recovery under the Miller Act, enforcement of such terms to preclude Miller Act liability contradicts the express terms of the Miller Act"); <u>Mai Steel Service, Inc. v. Blake Construction Co.</u>, 981 F.2d 414, 417-18 (9th Cir. 1992)(increased out-of-pocket costs caused by construction delays fall within the intended coverage of the Miller Act and may be recovered by a subcontractor from a surety – "the subcontractor's ability to recover did not hinge either on the cause of the delay or the terms of the underlying contract"); <u>Seaboard Surety Co. v. U.S. ex rel. C.D.G., Inc.</u>, 355 F.2d 139, 145 (9th Cir. 1966)(Miller Act surety required to reimburse subcontractor for extra work which was impliedly authorized by the general contractor).

799 F.2d 1382 (9th Cir. 1986) for a contrary ruling is misplaced. First, that case involved neither a Miller Act bond nor the issue of payment due under a subcontract. The rule it espouses, that generally a surety will be discharged when the contract it has bonded is materially altered or changed without the surety's knowledge or consent,[4] does not apply here.[5]

In Cam-Ful Industries, Inc. v. Fidelity and Deposit Co. of Maryland, 922 F.2d 156 (2nd Cir. 1991) the second circuit reviewed the decision of a district court dismissing claims against a public works project surety on the basis that a modification in a subcontract discharged the surety from liability. The court reversed, finding that if any modification had occurred it had occurred on the subcontract level, and explaining that the rule discharging a surety "only applies to alterations of the prime contract."[6]

---

[4] *Id*. at 1385.

[5] Kanag'Iq's bootstrapping argument misapplying language from *Taylor Construction, Inc. v. ABT Service Corporation, Inc.*, 163 F.3d 1119 (9th Cir. 1998) does not rescue the surety. The holding in *Taylor* is only that a successful subcontractor making a Miller Act claim is entitled to be paid, by the surety, all sums due him under his subcontract, whether or not the claim is for more than payment for labor and materials. *Id*. at 1122-23. Although the case uses the terms "bonded contract" and "bonded subcontract" and "subcontract" somewhat interchangeably, it is not authority for the proposition that changes to the terms of a subcontract exonerate a Miller Act surety. The case says no such thing and the relevant authority on the subject is to the contrary.

[6] *Id*. at 161, relying for this proposition on *Reliance* and also on *Ramada Development Co. v. U.S. Fidelity & Guarantee Co.*, 626

The surety has shown no alteration to the prime contract that would permit it to avoid liability, and in any event the express terms of the Miller Act bond provide that notice of, and authorized modifications to the prime contract were contemplated and allowed.

**A SURETY IS LIABLE FOR QUANTUM MERUIT CLAIMS IN A MILLER ACT CASE.**

Defendants seem to suggest that the surety bears no liability for quantum meruit claims, but such a claim flies in the face of established and controlling law.  In a Miller Act case, claims for quantum meruit are not limited to actions against the prime contractor, but may also be brought against the Miller Act surety. Central Steel Erection Co. v. Will, 304 F.2d 548, 552 (9th Cir.

---

F.2d 517 (6th Cir. 1980).  Moreover, the court explained:

> "the surety bears the burden of making inquiries and informing itself of the relevant state of affairs of the party for whose conduct it has assumed responsibility."
>
> * * *
>
> Requiring a prime contractor to obtain a payment bond assures subcontractors that they will be paid for their work.  The policy behind surety bonds is not to protect a surety from its own laziness or poorly considered decision.  "A surety cannot 'rest supinely, close his eyes, and fail to seek important information,' and then seek to avoid liability under the guaranty by claiming he was not supplied with such information."

*Id.* at 162, quoting *State v. Peerless Insurance Co.*, 492 N.E.2d 779, 780 (N.Y. App. 1986) and *Mohasco Industries, Inc. v. Giffen Industries, Inc.*, 335 F. Supp. 493, 497 (S.D.N.Y. 1971). *Reliance*, *supra*, 799 F.2d 1382 at 1385, also provided that a surety seeking exoneration must show that an alteration caused prejudice or damage to it.  Even if the rule of *Reliance* applied here, which it does not, this is a requirement which Kanag'Iq has glossed over, presenting no such proof.

1962); Continental Casualty Co. v. Schaefer, 173 F.2d 5, 8 (9th Cir. 1949); U.S. v. Algernon Blair, Inc., 479 F.2d 638, 641 (4th Cir. 1973); U.S. ex rel. Susi Contracting Co. v. Zara Contracting, 146 F.2d 606, 612 (2nd Cir. 1944). To the extent Defendants claim otherwise, they are simply wrong.

**DEFENDANTS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING ARGUMENT CONFUSES CONTRACT AND TORT LIABILITY – EVEN IF THE JURY DID AWARD DAMAGES FOR SUCH A BREACH, THE SURETY CANNOT AVOID LIABILITY OF THAT BASIS.**

Defendants also argue that the surety is absolved from liability and cites a case which holds that California law does not recognize a tort claim by a subcontractor against a surety for a breach of the covenant of good faith and fair dealing. U.S. v. Wausau Ins. Cos., 755 F. Supp. 906 (E.D. Cal. 1991). The jury in this case was not instructed on tort liability, however. It was provided with instructions based on the Alaska Pattern Jury Instruction 24.15, a contract case instruction.

A breach of the covenant of good faith and fair dealing can be a breach of contract or a tort. O'Connor v. Star Ins. Co., 83 P.3d 1, 10 (Alaska 2003); Charles v. Interior Regional Housing Authority, 55 P.3d 57, 59 (Alaska 2002). In Alaska, however, a claim for a breach of the implied covenant of good faith and fair dealing, in ordinary commercial contracts, sounds only in contract. State Department of Natural Resources v. Transmerica Premier Ins. Co., 856 P.2d 766, 774 (Alaska 1993); Nome Commercial Co. v. National Bank of Alaska, 948 P.2d 443, 452 (Alaska 1997). As such,

a breach of the duty is a breach of contract. <u>U.S. v. Wausau</u> does not apply. In any event, the jury awarded GMW's expectation damages under the contract. Tort damages were not awarded. The surety cannot avoid liability on this basis.

**GMW'S FAILURE TO PLEAD WAIVER AND RATIFICATION IS NOT FATAL – BOTH WERE AN INTEGRAL PART OF ITS BREACH OF CONTRACT CLAIM.**

In its complaint, GMW alleged a breach of contract by Kanag'Iq. The contract it claims was breached was the subcontract entered into by the parties that was modified shortly after it was signed. As it explained in its opposition to Kanag'Iq's motion for summary judgment, "it provided Kanag'Iq with a lump sum price for which it would perform each delivery order and was then instructed to do the work for the price quoted."[7] GMW's opposition to the motion was based on its claim that the 2000 contract, whether it was integrated or not, was modified by the conduct of the parties and that Kanag'iq waived the right to enforce it as written.[8] GMW's claims of waiver and ratification on Kanag'Iq's part are integral parts of its breach of contract claim and have been part of the case since its inception.

Defendants again rely upon GMW's failure to plead waiver and ratification as affirmative defenses to relieve them of liability, but neither theory was essential to the jury's verdict and even it

---

[7] GMW's opposition to Kanag'Iq's motion for summary judgment at 3.

[8] *Id.* at 13.

they had been, Federal Rule of Civil Procedure 15(b), entitled "Amendments to Conform to the Evidence," provides that:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of the issues.

Moreover, Defendants raised no objection to introduction of the evidence on these issues at trial, only to instruction of the jury on the legal principles.

**A WRITING IS NOT REQUIRED TO MODIFY A CONTRACT OR TO WAIVE A CONTRACT PROVISION REGARDLESS OF A CONTRACTUAL PROVISION TO THE CONTRARY.**

Defendants incorrectly claim that the Court did not cite any authority that would allow a party to disregard express contractual language regarding modification and waiver. However, in its denial of Defendants' motion for summary judgment, this Court cited American Jurisprudence, 17A Am. JUR. 2d Contracts § 507 (2007) for the proposition that contract language which requires modifications or waivers of rights to be in writing does not prohibit parties from changing those terms, specifically:

> [T]he parties to a contract are ordinarily as free to change it after making it as they were to make it in the first instance, <u>notwithstanding provisions in it designated to hamper such freedom, or regardless of contractual provisions to the contrary</u> (emphasis added).

The Court was correct. It has long been the law that no-modification-or-waiver-unless-in-writing clauses are frequently not

enforceable because of the conduct of the parties. As the court in Bailey v. Norton, 283 P.2d 400, 405 (Kans. 1955) long ago explained, quoting 9 Am. Jur. Building and Construction Contracts, 17, 18 §23:

> "Although stipulations in building or construction contracts requiring written orders or agreement for extra work or alterations are valid and binding so long as they remain in effect, it is equally well settled that they may be avoided by the parties to the contract. The courts have adopted various theories of avoidance which may be classed as those of independent contract, modification or recision, waiver and estoppel. These theories have not always been kept distinct, the court frequently using the terms especially in the case of waiver and modification interchangeably, looking merely at the ultimate question of liability. A waiver of such stipulation by the owner is the theory on which it is most frequently avoided. Among the acts or conduct amounting to waiver are the owner's knowledge of, agreement to, or acquiescence in such extra work, a course of dealing which repeatedly disregards such stipulation, and a promise to pay for extra work, orally requested by the owner and performed in reliance thereon."
>
> Without attempting to exhaust the field it may be stated that ample support for the doctrine stated ... is to be found in numerous other well-recognized and established legal treatises and textbooks. See, e.g. 2 Williston on Contracts (Rev. Ed.), 1702, § 591; 6 Williston on Contracts (Rev. Ed.) 5171, 5178 §§ 1826, 1828; 6 Corbin on Contracts, 156, § 1294; Restatement Contracts, § 407. See, also, 66 A.L.R., Anno., 649, particularly 662 and 679; 31 Illinois Law Review, 783, 786, inclusive; 30 Minnesota Law Review, 547, 550 inclusive and numerous decisions therein referred to.
>
> It remains true that a written contract may be modified by a later oral agreement, even though the contract precludes oral

modification,[9] and that despite a contract's requirement that a waiver be in writing, contractual provisions may be waived even if they are not in writing.[10]  See <u>Steenberg Construction Co. v. The Prepakt Concrete Co.</u>, 381 F.2d 768, 773 (10th Cir. 1967)(Miller Act case applying Illinois law – "A requirement for written agreements *** may be waived, modified or rescinded by a subsequent oral contract * ** as evidenced by the conduct of the parties"); <u>U.S. for the use of Ascher Brothers Co., Inc. v. American Home Assurance Co.</u>, 2003 U.S. Dist. LEXIS 21388 at (N.D. Ill. 2003) at 51 (citations omitted)(Miller Act case – "A written contract may be modified by a subsequent oral agreement, even where the contract precludes oral modifications.  Further, '[a] contract is validly modified if the party which did not propose the changes is shown to acquiesce in the modification through a course of conduct consistent with acceptance'"); <u>United States v. Kelfstad Engineering Co.</u>, 324 F. Supp. 972, 975 (W.D. Pa. 1971)(Miller Act

---

[9] *Rule Sales and Service, Inc. v. U.S. Bank Nat'l Assn.*, 991 P.2d 857, 863 (Ida. App. 1999); *Tadros v. Kuzmak*, 277 Ill. App. 3d 301, 312 (Ill. App. 1995); *Eastline Corp. v. Marion Acts., Ltd.*, 524 So.2d 582, 584 (Miss. 1988); *Century Refining Co. v. Hall*, 316 F.2d 15, 20 (10th Cir. 1963)(an intent to waive, modify or rescind may be inferred from the actions of the parties); *J.T. Majors & Son, Inc. v. Lippert Bros., Inc.*, 263 F.2d 650, 654 (10th Cir. 1958)(Miller Act case – applying Kansas law); *Grand Trunk Western R. Co. v. H. W. Nelson Co.*, 116 F.2d 823, 834 (6th Cir. 1941).

[10] *Slidell, Inc. v. Millennium Inorganic Chemicals, Inc.*, 460 F.3d 1047, 1055 (8th Cir. 2006); *Christian-Dior New York, Inc., v. Koret, Inc.*, 792 F.2d 34, 40 (2nd Cir. 1986); *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 776 F.2d 198, 202 (7th Cir. 1985).

case applying Pennsylvania law – "Even though a written contract provides that it can only be modified in writing it may be modified by subsequent oral agreement of the parties, or conduct which constitutes a waiver of the condition.")[11]

Alaska law is not to the contrary. Despite Defendants' statement to the contrary, Alaska Statebank v. Fairco, 674 P.2d 288 (Alaska 1983) does not state whether or not the deed of trust upon which it relied in repossessing collateral contained a no-modification-or-waiver-unless-in-writing clause. One of the cases on which it relies, which reached the same resolution, did contain such a clause. *See* Ford Motor Credit Co. v. Waters, 273 So.2d 96, 99-100 (Fla. App. 1973). *See also* Gilbert v. Sexton, 401 P.2d 300, 301-302 (Alaska 1965) holding that a written contract may be modified by the conduct of the parties and relying in part on Davis v. Payne & Day, Inc., 348 P.2d 337, 339 (Utah 1960) in which the court stated, specifically, that "It is a well established rule of law that parties to a written contract may modify, waive, or make new terms notwithstanding terms in the contract designed to hamper such freedom."

Neither does National Bank of Alaska v. J.B.L.& K. of Alaska, Inc., 546 P.2d 579 (Alaska 1976) say that a contract requiring modifications to be in writing cannot be modified by the conduct of

---

[11] *See also U.S.A. for the use and benefit of Vulcan Materials v. Vole Construction*, 622 F.2d 880, 882 n. 2 (5th Cir. 1980)(failure to reduce a modification to writing may nevertheless be a waiver).

the parties as Defendants claim.  It holds that a modification did not occur in that case as there was no consideration for one.

<u>Hendrickson v. Freericks</u>, 620 P.2d 205 (Alaska 1980), on which Defendants also rely, was discussed in <u>Dillingham Commercial Co., Inc. v. Spears</u>, 641 P.2d 1, 19 (Alaska 1982) in which the court stated:

> Literally applied, this "non-waiver" clause would permit the landlord to accept late payment and still assert a default of the lease unless she waived such default in writing.  However, "such a nonwaiver clause will not, in all circumstances, foreclose the lessor from waiving a forfeiture based on past breaches."... Thus we hold that the superior court was correct in concluding that Spears' long acquiescence constituted a waiver of her right to claim a default for Dillingham's late payment of rent.

<u>Id</u>. a 19 (citations omitted).  The court, in <u>Dillingham Commercial</u>, found that a waiver occurred despite a contract clause to the contrary.  Simply, Defendants' claims that contractual provisions legally preclude the jury's verdict are mistaken.  The facts and the law support the verdict that was rendered.

For all of the foregoing reasons, Defendants' motion for JNOV or a new trial should be denied.

Respectfully submitted this 13th day of February, 2008.

s/ Sarah J. Tugman
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Phone: (907) 677-7889
Fax: (907) 677-9188
E-mail: sjtugman@gci.net
Alaska Bar No.: 8310101

CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of February, 2008, a copy of the foregoing document was served electronically on Tom Gingras, attorney for Kanag'Iq Construction, Inc.

s/Sarah J. Tugman
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Phone: (907) 677-7889
Fax: (907) 677-9188
E-mail: sjtugman@gci.net
Alaska Bar No.: 8310101