IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES for the use of GMW Fire Protection, Inc., an Alaska Corporation,<br><br>          Plaintiff,<br><br>  vs.<br><br>KANAG'IQ CONSTRUCTION CO., INC., an Alaska Corporation, and WESTERN SURETY COMPANY, a South Dakota Corporation,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. A05-170 CI (TMB)<br>) |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO ALTER OR AMEND A JUDGMENT**

A motion to alter or amend a judgment may be granted when the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. Howard v. Gutierrez, 503 F.Supp.2d 392, 394 (D.D.C. 2007). Defendants move this Court to reconsider its Memorandum Decision and Order [Re: Motion at Docket No. 131] dated June 28, 2008, based on the need to correct a clear error and prevent manifest injustice. In its decision, the Court misdescribes the proceedings at trial and Defendants' respective positions in their underlying Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial. In doing so, the Court misconstrues the applicable law and arrives at a conclusion that is logically inconsistent and thus mistaken. Defendants respectfully

Memorandum in Support of Motion to Alter or Amend a Judgment                                          Page 1 of 9
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

request the Court to reconsider its Memorandum Decision and Order [Re: Motion at Docket No. 131] and to amend the judgment accordingly.

## DISCUSSION

**A.  Western Surety.**

In its decision, the Court stated that Western claims the scope of its liability is limited to breach of contract, noting that both breach of contract and *quantum meruit* claims are permitted under the Miller Act.  [Order, p. 2, citing U.S. ex rel. Leno v. Summit Constr. Co., 892 F.2d 788, 791 (9th Cir. 1989)]  The Court misunderstands Western's position on the issue of its liability.  The quantum meruit claim in Leno was with respect to extra work done on the project, as opposed to work performed under the subcontract.  Id. at 789.  GMW's claims are solely for work performed under the subcontract.  [Exhibit A]  Western did not and does not dispute that, as a general matter as to Kanag'Iq, both breach of contract and *quantum meruit* claims are permitted under the Miller Act.  Rather, Western disputes the scope of its liability in this particular case under either theory.

Assuming, *arguendo,* that the Court is correct that the term "bonded subcontract" as used in Taylor Constr. Inc. v. ABT Service Corp. Inc., 163 F.3d 1119, 1122 (9th Cir. 1998) is a shorthand reference to work done in furtherance under a subcontract with the prime contractor, Western maintains that GMW's right to recover against Western for that work is limited in this case by the terms of the payment bond on the main contract and the terms of the subcontract.  Regarding modification, the Court is mistaken when it states that Western argues "without explanation" that the modification of the subcontract also modified

Memorandum in Support of Motion to Alter or Amend a Judgment  
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*  
Case No. A05-170 Civil (TMB)

Page 2 of 9

the prime contract. [See Decision, p. 4; Reply, p. 5, ¶ 1] To the contrary, Western cited the trial testimony of Steve Frere and Phil Young that established the main contract operated as a unit-price contract the first two years, but did *not* operate as a unit-price contract in the third year -- irrespective of the subcontract. [Reply, p. 5; see Trial Testimony of Steve Frere and Phil Young, January 23, 2008] Western's obligation in this matter only arises from the payment bond on the main contract and the terms of the bond to which it agreed. [Exhibit C at Docket No. 23] Western did not bind itself with respect to a main contract that was modified such that it did not operate according to its terms as a unit-price contract in the third year.

In its decision, the Court concluded that the main contract was not modified in the third year and the subcontract was modified by "extension the subcontract [which, by definition, includes its terms] for an additional year." [Order p. 5] First, the original term of the subcontract was one year. [Exhibit B at Docket No. 23] Based on the jury's findings, the subcontract was not extended by option with the main contract in the second and third years of the project. This dispute concerns only the third year. Based on the jury's findings, the conclusion that the modification of the subcontract was only an extension of the subcontract for an additional year is, on its face, incorrect. If the Court is suggesting the subcontract was extended the second year and was non-existent the third year, then GMW would not be able to bring its claims "under the contract" as stated in the complaint. [Exhibit A]

Eide & Gingras, P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

Memorandum in Support of Motion to Alter or Amend a Judgment                     Page 3 of 9
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

Second, with regard to the "extended" subcontract (which, by definition, includes its payment terms), GMW's right to recovery against the surety, absent modification of the main contract, would thus be limited by the terms of the subcontract. As the Court noted in its decision, the <u>Taylor</u> panel held:

> . . .The [Miller] Act also provides that any person "who has furnished labor or material in the prosecution of the work provided for in such contract . . . and who has not been *paid in full* therefore . . . shall have the right to sue on such payment bond . . . for the *sum or sums justly due him*.

<u>Taylor</u>, 163 F.3d at 1122 (emphasis added). The Court, however, failed to quote <u>Taylor</u> further regarding the meaning of "sums justly due" in this context. While it is true that Taylor sought recovery under the terms of the subcontract, and not under *quantum meruit*, that distinction doesn't make a difference in this case absent extra work by GMW and absent modification of the terms of the subcontract. In its decision, the Court expressly stated: "the modification in this case was essentially the extension of the [sub]contract for an additional year." [Decision, p. 5] This conclusion ignores one of the central issues contested at trial, as well as the jury's findings. It also demonstrates that GMW's right to recovery against the surety, absent modification of the main contract, would be limited to sums justly due for work provided for and compensable under the subcontract -- only modified by extension, according to the Court. The panel in <u>Taylor</u> explained, "'sums justly due' means the sums due the party under the bonded contract." <u>Id</u>.

Both the main contract and the subcontract were written as unit-price contracts and operated as unit-price contracts in the first two years. [Exhibits A-B at Docket No. 23; Trial Testimony of Steve Frere and Phil Young, January 23, 2008] The Court posits that

Memorandum in Support of Motion to Alter or Amend a Judgment
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)
Page 4 of 9

"[t]he modification in this case was essentially the extension of the subcontract for an additional year." [Order, p. 5] Compensation based on any method other than unit prices was not part of the compensation for the work to be done under the subcontract.

With regard to compensation under the subcontract in the third year, GMW did not bill according to unit prices and GMW did not calculate its alleged damages according to unit prices. Western did not agree to that modification and there is no evidence that it did. Thus, the Court identified the modification as an extension of the unit-price subcontract for an additional year, yet it simultaneously allowed damages to be calculated and awarded on a non unit-price basis that exceeds both the scope of the subcontract and the scope of the payment bond on the main contract. That position is logically inconsistent and thus untenable.

Western's liability under the payment bond should not be increased for modifications it did not approve. The extent to which Western's liability is inappropriately being increased is reflected in what occurred at trial: Kanag'Iq introduced evidence of what it believed it was owed by GMW under a unit-price contract in the final year, while GMW introduced evidence not of what it believed it was owed under a unit-price contract extended for an additional year, but instead introduced evidence of what it believed it was owed based on each delivery order as its own lump-sum contract in the final year. [See also, Testimony of Glenn Johnson: January 23, 2008] That constituted a modification to the terms of the subcontract, not merely an extension of the subcontract. To the extent the Court concluded that the modification only extended the term of the subcontract an

Memorandum in Support of Motion to Alter or Amend a Judgment                         Page 5 of 9
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

additional year, the parties continued to be bound by the terms of the subcontract. It is prejudicial to Western to hold it liable beyond the scope of its obligation on a unit-price basis under the payment bond in this matter. Western has no liability to GMW and respectfully requests the Court to modify the judgment accordingly.

B.   **Kanag'Iq.**

In its discussion of liability on the part of Kanag'Iq, the Court expanded on its view of the modification and the attendant obligations of the parties to the subcontract:

> The modification in this case was essentially the *extension* of the contract for an additional year. The consideration was the quid pro quo that GMW would continue to perform its obligations under the subcontract and, in exchange therefore, Kanag'Iq would pay GMW for the labor and materials provided in prosecuting the prime contract between Kanag'Iq and the United States. Nothing in Alaska law precludes the parties from continuing to perform under an otherwise expired contract. That the agreement to *extend* a contract beyond its expiration may be shown by the conduct of the parties is consistent with existing Alaska precedent.[1]

[Decision, pp. 5-6 (emphasis added)] To the extent that the modification was simply to *extend* a contract an additional year, the parties remained bound by the terms of that contract. It is undisputed that the subcontract as written was a unit-price contract. The consideration was the *quid pro quo* that GMW would continue to perform its obligations under the subcontract and, in exchange therefore, Kanag'Iq would perform its obligation under the subcontract -- which was to pay GMW for the labor and materials on a unit-price basis. For the time period in dispute, however, GMW did not bill according to unit prices

---

[1]   The main contract was extended in writing in option year one and option year two, so it is presumed that the Court is referring solely to the subcontract when it discusses modification as extension of the contract.

Memorandum in Support of Motion to Alter or Amend a Judgment                                Page 6 of 9
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

and GMW did not calculate its alleged damages according to unit prices. The Court's logic here is again mistaken.

With regard to the Court's remarks about waiver and ratification, the Court is mistaken in its assertion that Kanag'Iq did not object to the introduction of any of the evidence that logically tended to establish waiver. [Decision, p. 6] On the first day of trial, to the best of the undersigned counsel's recollection, the undersigned made an objection on record, before taking evidence, regarding the fact that waiver and ratification had not been raised as affirmative defenses in GMW's answer to Kanag'Iq's counterclaims, and GMW should therefore be precluded from introducing evidence to establish those defenses. [Trial Record: January 22, 2008] Counsel stated there was no objection to the introduction of such evidence for some other purpose. The Court confirmed, on record, as counsel recalls, that GMW's answer to Kanag'Iq's counterclaims did not contain any affirmative defenses regarding waiver and ratification. [Trial Record: January 22, 2008] Thus, in addition to the pleadings, this issue was addressed on the first day of trial -- contrary to the Court's assertion in its decision.

## CONCLUSION

Western Surety is not liable beyond the scope of the payment bond and the terms therein, which expressly preclude Western's liability for unauthorized modifications to the contract. Western maintains that the main contract was modified in the third year, that Western did not authorize the modification and is therefore not liable. To the extent the Court concluded that there was no modification to the main contract and the modification

Memorandum in Support of Motion to Alter or Amend a Judgment    Page 7 of 9
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

to the subcontract was only to extend it for an additional year, the parties remained bound by the terms of the subcontract -- a unit-price contract. The Court, however, identified the modification as the extension of the unit-price subcontract, yet simultaneously allowed damages to be calculated and awarded on a non unit-price basis that exceeds the scope of the subcontract. That position is logically inconsistent and mistaken. Western and Kanag'Iq are not liable under the subcontract to GMW for alleged damages based on non-unit prices. Western and Kanag'Iq, individually, respectfully request the Court to modify the judgment accordingly.

DATED at Anchorage, Alaska this 7th day of July, 2008.

> EIDE & GINGRAS, P.C.
> Attorneys for Defendants
> Kanag'Iq Construction Co., Inc. and
> Western Surety Company
>
> By:    s/Thomas S. Gingras
>        Thomas S. Gingras
>        425 G Street, Suite 930
>        Anchorage, AK  99501
>        Phone:  (907) 279-0930
>        Fax:    (907) 279-0933
>        E-mail: tsgingras@egpalaska.com
>        Alaska Bar No. 7811098

Memorandum in Support of Motion to Alter or Amend a Judgment    Page 8 of 9
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

**CERTIFICATE OF SERVICE**

I am a legal secretary employed by the law firm of Eide & Gingras, P.C. That on this 7th day of July, 2008, I served

    [x] Electronically

a true and accurate copy of the foregoing document upon the following counsel of record:

    Sarah J. Tugman, Esq.
    2509 Eide Street, Suite 4
    Anchorage, AK  99503

EIDE & GINGRAS, P.C.

By__/s/Donna Charter_____

F:\431\05\Post-Trial Documents\Motion for Reconsidn Memo.DOC

Memorandum in Support of Motion to Alter or Amend a Judgment   Page 9 of 9
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)