Sarah J. Tugman
Attorney at Law
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Telephone: (907) 677-7889
Fax: (907) 677-9188
e-mail: sjtugman@gci.net
Attorney for GMW Fire Protection, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

THE UNITED STATES for the use of GMW Fire Protection, Inc., an Alaska Corporation,

Plaintiff,

v.

KANAG'IQ CONSTRUCTION CO., INC., an Alaska Corporation and WESTERN SURETY COMPANY, a South Dakota Corporation,

Defendant.

Case No. A-05-0170 CV (TMB)

OPPOSITION TO DEFENDANTS' MOTION TO ALTER OR AMEND THE JUDGMENT

Kanag'Iq picks and chooses from discrete parts of the Court's prior opinion, mixes the concepts, misstates the Court's conclusions, and constructs arguments that are unsupported by the law or the facts.

Further, GMW disputes the following assumptions on which Kanag'Iq's argument seems to be based: (1) that GMW recovered on a quantum meruit basis as opposed to on the subcontract which was amended – from the beginning of the project – so that payment was to be made in the amount of GMW's quotes and invoices; (2) the

defendants' conclusions as to what the witnesses' testimony established and what the jury concluded; (3) that the subcontract operated as a unit price contract for the first two years; (4) that the Court concluded that the modification of the subcontract was an extension of the unit-price subcontract for an additional year and that the payment terms were not modified.

While GMW is not entirely sure it understands the Defendants' arguments, it answers what it believes the Defendants claim as follows.

LIABILITY OF THE SURETY

The Defendants' new argument, about exoneration of the surety based on an alleged modification of the prime contract, might make sense if the surety was seeking to avoid responsibility for Kanag'Iq's liability to the government because of a prime contract modification that significantly increased the surety's risk, but that is not the case.[1] Here, there is no dispute between the government and Kanag'Iq for which the surety faces liability.

Strangely, the surety seems to be seeking to avoid liability to Kanag'Iq's subcontractor arguing that there was a modification to the prime contract, agreed to by the government and the prime contractor. Modifications to the prime contract do not exonerate

---

[1] *See United State v. Reliance Insurance Co.*, 799 F.2d 1382 (9th Cir. 1986)(modifications to contract materially prejudiced surety – no subcontract was involved).

the surety from liability to a subcontractor, however,[2] and Defendants' offer absolutely no authority for such an odd proposition.[3]

Moreover, the Payment Bond itself provides that authorized modifications to the Kanag'Iq/government contract are permissible and that notice to the surety of such modifications are waived. *See* Exhibit 1 to GMW's opposition to Defendants' Motion for JNOV or a New Trial (the payment bond). The testimony at trial was clear. Both the government and Kanag'Iq agreed to operate, as they did, with payment to be made on the basis of the engineer's estimates or those amounts as altered by change orders. Notice to Western Surety of that change was not required.[4]

---

[2] *See Equitable Surety Company v. U.S.* 234 U.S. 448, 34 S. Ct. 803, 58 L. Ed. 1394 (1914)(construing predecessor to § 40 U.S.C. 3133 and holding that changes made to a construction contract, by a contractor and the government without the surety's consent, did not affect the liability of the surety to materialmen when the general character of the work did not change nor did the general character of the materials necessary for its execution). *See also First National Ins. Co. of America v. Lynn,* 525 F.2d 1, 5-6 (1st Cir. 1975).

[3] Exoneration of a surety for liability to a subcontractor, based on the conduct of a prime contractor and an owner, over which a subcontractor has no control, would fly in the face of the Miller Act which is meant to protect a subcontractor's right to payment for services and materials provided on a federal job. *See United States v. Westar Engineering, Inc.*, 290 F.3d 1199, 1205 (9th Cir. 2002)(the Miller Act protects persons supplying labor and material, is highly remedial, and should be liberally construed to protect those whose labor and materials go into public projects).

[4] Defendants are absolutely incorrect in stating that "Western did not bind itself with respect to a main contract that was modified such that it did not operate according to its terms as

KANAG'IQ'S LIABILITY

GMW is unclear as to the basis for Defendants' argument that Kanag'Iq is not liable to GMW. It appears to come from a misreading or misunderstanding of that part of the Court's opinion, in response to Kanag'Iq's argument that a modification of the contract had to be in writing – specifically the language that "the modification in this case was essentially the extension of the contract for an additional year."[5] While the Court did so state, it did not state that the payment terms of the contract had not been modified, and GMW does not believe that the Court meant to so imply. In fact, earlier in its opinion the Court assumed that the contract did not operate as a unit-price contract during the third year.[6]

The jury found Kanag'Iq liable for the exact amount of the unpaid invoices that GMW presented to Kanag'Iq, clearly finding that Kanag'Iq should have paid those invoices which matched or were less than GMW's earlier quotes. This amount was supported by the claim that GMW has made from the outset, that it provided Kanag'Iq with a lump sum price for which it would perform each delivery order and was then instructed to do the work for the prices quoted.

---

a unit-price contract in the third year." Defendants' memorandum at 3.

[5] Memorandum Decision and Order at 5.

[6] *Id.* at 4.

It invoiced the amounts quoted, or less, and GMW asked at trial, and in its complaint, for the unpaid invoice amounts.

The jury understood that the contract was modified in such a manner, and had to be, due to the fact that the exact material quantities were unknown, and the project had not been designed at the time that GMW started work. GMW was the one that designed it.

GMW does not believe that the Court disagrees with the jury's conclusion. GMW believes that the Court's statement, on which Defendants' hang their argument, had to do only with the fact that the original written contract was, by its terms, effective only for one year, and its conclusion that the parties could extend the contractor/subcontractor relationship, and the contract as modified, without another written contract. The Defendants, desperate to avoid their responsibility to pay GMW, are only grasping at straws.

<u>WAIVER</u>

GMW's counsel disagrees with Defendants' counsel's recollection of objections to the introduction of evidence at trial. She only recalls him moving for a directed verdict on the issue of waiver and ratification based on a failure to plead them, on Thursday January 24, 2008 and again at the conclusion of trial – after GMW presented its evidence, and she recalls him objecting to jury instructions on those subjects.

In any event, the issues of waiver and ratification were part

and parcel of, and inseparable from, GMW's claim that the Kaang'Iq/GMW contract was modified soon after it was signed. Whether the theory is described as that the contract was modified orally or by conduct or whether Kanag'Iq, by its conduct, waived any right to insist on the written terms, the issue is the same and was part of the case from the outset. Evidence of both was presented by GMW without objection.

SUMMARY

There is no question that GMW performed work and provided materials for the Elmendorf fire requirements project. There is no question that Kanag'Iq did not pay all of the invoices it received from GMW. The jury found that those invoices should have been paid long ago. There is no question that Western Surety signed a payment bond on this project agreeing to pay subcontractors if Kanag'Iq did not.

The Miller Act was written to provide a remedy to a subcontractor in exactly such a case. Kanag'Iq and Western Surety should pay GMW the amounts the jury determined were due – without further delay.

Respectfully submitted this 8th day of July, 2008.

s/ Sarah J. Tugman
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Phone: (907) 677-7889
Fax: (907) 677-9188
E-mail: sjtugman@gci.net
Alaska Bar No.: 8310101

CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of July, 2008, a copy of the foregoing document was served electronically on Tom Gingras, attorney for Kanag'Iq Construction, Inc.

s/Sarah J. Tugman
2509 Eide Street, Suite 4
Anchorage, Alaska 99503
Phone: (907) 677-7889
Fax: (907) 677-9188
E-mail: sjtugman@gci.net
Alaska Bar No.: 8310101