IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE UNITED STATES for the use of GMW Fire Protection, Inc., an Alaska Corporation,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>KANAG'IQ CONSTRUCTION CO., INC., an Alaska Corporation, and WESTERN SURETY COMPANY, a South Dakota Corporation,<br><br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. A05-170 CI (TMB) |

### REPLY TO OPPOSITION TO DEFENDANTS' MOTION TO ALTER OR AMEND A JUDGMENT

Defendants KANAG'IQ CONSTRUCTION CO., INC. and WESTERN SURETY COMPANY, reply to GMW's Opposition to Defendants' Motion to Alter or Amend a Judgment [Re: Motion at Docket No. 131]. In its Opposition, GMW misunderstands Defendants' arguments with respect to liability in this matter and GMW misconstrues any significance of the jury's findings in the context of the underlying Motion for Judgment Notwithstanding the Verdict.

A.  **Western Surety.**

As a preliminary matter, GMW is mistaken with respect to the assumptions on which it concludes Western bases its argument. Specifically, Western does not assume GMW recovered on a *quantum meruit* basis. It is difficult to comprehend how GMW

Reply to Opposition to Defendants' Motion to Alter or Amend a Judgment    Page 1 of 7
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

reaches this conclusion, in light of the underlying motion practice. Western does, however, maintain that the prime contract operated as a unit-price contract the first two years when Phil Young and Steve Frere were on the project. Phil Young and Steve Frere both testified to this at trial. [Trial Testimony of Phil Young and Steve Frere, January 23, 2008] Western also maintains that the Court expressly concluded in its order that the modification of the subcontract "was essentially the extension of the contract for an additional year." [Order, p. 5] It is undisputed that the initial term of the subcontract was one year, and it was a unit-price contract. [Exhibit B at Docket No. 23] This dispute arose in the third year. Thus, Western maintains that the subcontract, if extended, was extended for two additional years.

Contrary to GMW's assertion, Western does not argue that modification of the prime contract simply exonerates the surety from liability to a subcontractor. [See Opposition, p. 2] Rather, Western argues that the scope of the surety's liability is limited in this case by the terms of the payment bond on the prime contract and the terms of the subcontract. [Motion, p. 2:20-23] With regard to the surety, GMW argues that the government and Kanag'Iq modified the prime contract by agreeing to operate on the basis of estimates and change orders. [Opposition, p. 3] Western is willing to assume *arguendo*, but does not concede, that this happened. GMW argues, however, that notice to Western of that modification was not required. [Opposition, p. 3] GMW cites no authority whatsoever for its proposition that notice to the surety of this modification was not required. [Opposition, p. 3]

Reply to Opposition to Defendants' Motion to Alter or Amend a Judgment   Page 2 of 7
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

Eide & Gingras, P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

Assuming *arguendo* that the prime contract was modified by operating differently in the third year, it is not for the parties to the contract to decide among themselves that their modifications are of no interest to the surety -- at least when those modifications go beyond matters of mere form. <u>United States v. Reliance Ins. Co.</u>, 799 F.2d 1382, 1386 (9th Cir. 1986). A modification that alters the method of operation and the terms of payment under the contract is a matter of substance, not form. See <u>Hollaus v. Arend</u>, 511 P.2d 1074, 1075 (Alaska 1973) (material terms of contract regarding real property included payment terms).

In this case, the modification to the prime contract with regard to the method of operation and payment resulted in a potential modification of the surety's obligations under the payment bond, which was expressly executed with respect to the contract identified therein, and only that contract: the prime unit-price contract between the government and Kanag'Iq, Contract No. F65501-00-D-0010. [Exhibit B] Specifically, the purported modification by conduct potentially increased the scope of the surety's liability, without its consent, by making it liable beyond the terms of the payment bond, which were specific to the prime contract. [Exhibit B] The surety's obligation is with respect to the prime unit-price contract, not with respect to work provided for in a modified lump-sum contract. [Exhibit B] While this modification has not yet resulted in a dispute between the government and Kanag'Iq, it did result in a dispute between Kanag'Iq and GMW. Western did not waive its right to notice of such modification of the bonded contract, did not consent to any such modification, and GMW presented no evidence at trial that

Reply to Opposition to Defendants' Motion to Alter or Amend a Judgment   Page 3 of 7
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

Western did consent to such modification. Absent notice to, and the consent of, the surety with respect to this modification which goes beyond a matter of mere form, the surety is discharged from its obligations under the payment bond. Reliance, 799 F.2d at 1386.

Even absent a requirement of notice to the surety of this modification, Western is not liable to GMW under these facts. The very authority that GMW cites to support its position undermines it. See Equitable Surety Co. v. United States, 235 U.S. 448 (1914). The dispute in Equitable concerned a contract for the construction of a school building, and the surety's liability to laborers and materialmen who worked on the project. Id. at 449. During the project the contractor changed the orientation of the building, a change in which the laborers and materialmen did not participate. Id. at 450, 458. With respect to the surety's liability to the laborers and materialmen under those facts, the court stated:

> But it lies at the foundation of this rule [that any change in the contract made between the principals without the consent of the surety discharges the obligation of the latter, even though the change be beneficial to the principal obligor] of *strictissimi juris* that the agreement altering the undertaking of the principal [obligor] must be participated in by the obligee[s] or creditor[s], in order that it may have the effect of discharging the surety. . . .
>
> [W]ith respect to obligations incurred by the contractor to laborers and materialmen, at least so far as their labor and materials are supplied in accordance with the original contract, it is obvious, we think, that a construction which would discharge the surety because of any change to which the laborers and materialmen were not parties would defeat the principal object that Congress had in view in enacting the statue. If the change were so great as to amount to an abandonment of the contract and the substitution of a substantially different one, so that persons supplying labor and materials would necessarily be charged with notice of such abandonment, a different question would be presented. But, in the case of such a change as was here made, - a mere change of position and location of the building, without affecting its general character; involving changes in grading, but having nothing to do with the furnishing of the materials upon

Reply to Opposition to Defendants' Motion to Alter or Amend a Judgment  Page 4 of 7
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

> which the action is based, - it seems to us that the responsibility of the surety to the materialman remains unaffected.

Id. at 457-458.  Conversely, if the change were so great as to amount to an abandonment of the contract and the substitution of a substantially different one, so that persons supplying labor and materials would necessarily be charged with notice of such abandonment, the responsibility of the surety to the materialman *is* affected.  As described above, the jury apparently concluded that the parties modified the prime contract in the third year of the project by operating on the basis of estimates and change orders.  GMW was on the project, knew that the project was not operating on a unit-price basis, and participated in the project accordingly.  [Opposition, p. 3; Trial Testimony of Phil Young and Steve Frere, January 23, 2008]  GMW thus had notice of the changes to the bonded unit-price contract with regard to operation and payment on a non-unit price basis.  Assuming *arguendo* that is the case, these changes essentially resulted in a lump-sum contract rather than a unit-price contract.  Because the purported changes were so great as to amount to an abandonment of the unit-price contract and the substitution of a substantially different one, such that GMW had notice of those changes and billed pursuant to those changes, the responsibility of the surety to GMW *is* affected -- unlike the responsibility of the surety in Equitable.  Under these facts, Western is not liable to GMW in this matter.

In light of the testimony at trial and the parties' arguments, it is unclear how or why the Court concluded that no modification of the prime contract has been established. [Order, p. 4]  Western believes the Court is mistaken with respect to that conclusion.  [See Trial Testimony of Phil Young and Steve Frere, January 23, 2008; Opposition p. 3]  To the

Reply to Opposition to Defendants' Motion to Alter or Amend a Judgment  Page 5 of 7
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

Eide & Gingras, P.C.
425 G Street, Suite 930
Anchorage, Alaska 99501
(907) 279-0930 telephone
(907) 279-0933 fax

extent the Court continues to conclude there was no modification of the prime contract, Western maintains that GMW's right to recovery would be limited to sums justly due for work provided for and compensable under the unit-price subcontract -- only modified by extension for an additional year, according to the Court.  [See Motion, p. 4]  Western respectfully asks the Court to modify the judgment accordingly.

B.   Kanag'Iq.

The basis of Kanag'Iq's argument with respect to its liability is that to the extent the Court concluded the modification is this case was an extension of the subcontract for an additional year, the parties remained bound by the terms of the subcontract -- which included payment on a unit-price basis.  [Exhibit B at Docket No. 23]  In its order the Court did not conclude that the subcontract had been modified in any other way.  Therefore, any liability on the part of Kanag'Iq is limited to the unit-price terms of the subcontract.  Kanag'Iq maintains that GMW's right to recovery would be limited to sums justly due for work provided for and compensable under the unit-price subcontract, only modified by extension.  [See Motion, pp. 6-7]  If there was no contract in the third year of the project and recovery is on a theory of *quantum meruit*, GMW would not be able to bring that claim "under the contract" as stated in the complaint.  [Motion, Exhibit A]

With regard to the issue of waiver, the associate for undersigned counsel has notes from the first day of trial that indicated the undersigned raised an objection on behalf of both Defendants regarding GMW's failure to plead waiver and ratification as affirmative defenses to Kanag'Iq's counterclaims, and an attendant objection to the introduction of

Reply to Opposition to Defendants' Motion to Alter or Amend a Judgment   Page 6 of 7
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)

evidence to establish those defenses. A review of the trial transcript should resolve any dispute with regard to that issue. [See Trial Transcript, January 22, 2008]

With regard to GMW's repeated references to the jury's findings, the underlying motion is one for judgment notwithstanding the verdict. The motion was made, and reconsideration of the Court's order was requested, precisely because Defendants, individually, are requesting judgment as a matter of law. Kanag'Iq respectfully requests the Court to modify the judgment accordingly.

DATED at Anchorage, Alaska this 17th day of July, 2008.

EIDE & GINGRAS, P.C.
Attorneys for Defendants
Kanag'Iq Construction Co., Inc. and
Western Surety Company

By:   s/Thomas S. Gingras
Thomas S. Gingras
425 G Street, Suite 930
Anchorage, AK  99501
Phone:  (907) 279-0930
Fax:     (907) 279-0933
E-mail:  tsgingras@egpalaska.com
Alaska Bar No. 7811098

**CERTIFICATE OF SERVICE**

I am a legal secretary employed by the law firm of Eide & Gingras, P.C. That on this 17th day of July, 2008, I served

[x] Electronically

a true and accurate copy of the foregoing document upon the following counsel of record:

Sarah J. Tugman, Esq.
2509 Eide Street, Suite 4
Anchorage, AK  99503

EIDE & GINGRAS, P.C.

By   /s/Donna Charter

F:\431\05\Motion for Reconsidn Reply.DOC

Reply to Opposition to Defendants' Motion to Alter or Amend a Judgment   Page 7 of 7
*The United States for the use of GMW Fire Protection v. Kanag'Iq Construction Co., Inc., et al.*
Case No. A05-170 Civil (TMB)